**HARNISCHFEGER CORPORATION,**
Plaintiff-Appellant,

v.

**SHEET METAL WORKERS INTERNA-TIONAL ASSOCIATION, AFL–CIO, and Sheet Metal Workers Union, Local No. 94, AFL–CIO, Defendants-Appellees.**

No. 20045.

United States Court of Appeals,
Sixth Circuit.

Dec. 15, 1970.

Rehearing Denied and Rehearing En Banc Denied Dec. 21, 1970.

Victor M. Harding, Milwaukee, Wis. (Thomas L. Butch, Escanaba, Mich., Anthony W. Asmuth, III, Milwaukee, Wis., on the brief), for appellant.

David Loeffler, Milwaukee, Wis. (Goldberg, Previant & Uelmen, Milwaukee, Wis., on the brief), for appellee Sheet Metal Workers Union, Local No. 94 AFL-CIO.

Donald W. Fisher, Toledo, Ohio, for appellee Sheet Metal Workers International Association, AFL–CIO; Mulholland, Hickey & Lyman, Toledo, Ohio, of counsel.

Before PHILLIPS, Chief Judge, McCREE and BROOKS, Circuit Judges.

McCREE, Circuit Judge.

Plaintiff-appellant Harnischfeger Corporation brought this action on January 20, 1969, against Sheet Metal Workers International Association, AFL-CIO and its Local 94, alleging violations of § 303 of the Taft-Hartley Act, 29 U.S.C. § 187,[1] and of Michigan common law, and sought $500,000 compensatory and $500,000 punitive damages. Appellant alleged violations of subsections (B) and (D) of § 8(b) (4) of the National Labor Relations Act, 29 U.S.C. § 158(b) (4),[2] as the basis of its claim under the Taft-Hartley Act.

Harnischfeger is a Wisconsin corporation licensed to do business in Michigan. It maintains a plant in Escanaba, Michi-

---

1. (a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b) (4) of this title.

(b) Whoever shall be injured in his business or property by reason or [sic] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

2. (b) It shall be an unfair labor practice for a labor organization or its agent * * *

(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is * * *

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing; * * *

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:

gan. In July, 1968, the corporation was engaged, through outside contractors, in the construction of several new buildings at its Escanaba plant. The dispute arose when the company decided to utilize its own employees, members of UAW Local 632, to construct a "travelling" spray paint booth which was to be housed in one of the new buildings. Local 94's business agent Harold Patten asked the company to use a contractor employing Local 94 members to erect the booth. The company refused, and, on July 29, 1968, Local 94 members began picketing the construction site in order to compel the company to contract out the work. There is no evidence that the picketing was directed at the employees of contractors performing other on-site work, but building trade union members employed by those contractors stopped work when the picketing began. Appellant does not allege acts of violence or threats to the public order.

On July 30, the company filed an unfair labor practice charge with the National Labor Relations Board, alleging a violation of § 8(b) (4) (D). The Board then obtained a temporary injunction under § 10(*l*) of the Act, 29 U.S.C. § 160 (*l*), directing the union to stop picketing. After a hearing under § 10(k), 29 U.S.C. § 160(k),[3] the Board ruled, on December 4, 1968, that Harnischfeger's employees were entitled to perform the disputed work. Local 94 agreed to comply with the Board's findings and, as required by § 10(k), the Board's Regional Director accordingly dismissed the company's unfair labor practice charges. The company then brought this suit in the Federal District Court.

The District Court entered judgment for defendants, on July 21, 1969, of no cause for action. In its findings and conclusions, the court stated that plaintiff failed to sustain the burden of proving that defendants sought a secondary boycott as defined in § 8(b) (4) (B); that no action would lie under state common law because Congress has preempted this field; that punitive damages cannot be granted under § 303 of the Labor Management Relations Act; that § 8 (b) (4) (D) of the National Labor Relations Act does not apply to disputes such as the one in question; and that the International Union is not responsible for the picketing by members of Local 94. On appeal, the company challenges the ruling on the applicability of § 8(b) (4) (D), the applicability of Michigan law under these circumstances, and the responsibility of the International Union for the picketing.

In their briefs, appellees do not argue that § 8(b) (4) (D) is inapplicable to disputes such as the one at bar. We believe it does apply. Typically in jurisdictional disputes, the union seeks to force the employer to reassign work from a rival union's members, or from non-union workers, directly to the protesting union's members. The use of a second employer as a vehicle for obtaining the work does not change the essential purpose and impact of the pressure on the employer. The employer's business is disrupted unless he agrees to change his business relationships so that members of the offending union may perform the work. Such pressure falls within the prohibition of § 8(b) (4) (D). NLRB v. Local 25, IBEW, 383 F.2d 449, 454 (2d Cir. 1967), enforcing 152 N.L.R.B. 671 (1965) & 157 N.L.R.B. 44 (1966); *see also* Local 978, United Bhd. of Carpenters v. Markwell, 305 F.2d 38, 47 (8th Cir. 1962).

---

3. (k) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

A more difficult question is whether union compliance with a Labor Board award under § 10(k) of the National Labor Relations Act is a defense against a suit under § 303 of the Labor Management Relations Act just as such compliance defeats an unfair labor practice charge under § 8(b) (4) (D) of the National Labor Relations Act. Appellees contend that since unions can invoke § 10(k) only by picketing, they should be afforded a complete defense to subsequent § 303 damage suits based upon § 8(b) (4) (D) if they comply with the Board's jurisdictional award. To hold otherwise, they argue, would make recourse to the remedy of § 10(k) prohibitively hazardous.

We believe International Longshoremen's and Warehousemen's Union v. Juneau Spruce, 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952), requires the rejection of the interpretation appellees urge. In that case the Court dealt with a suit brought under the old § 303 (a) (4) which was substantially identical to § 8(b) (4) (D). In response to the union's argument that § 303 rendered illegal only picketing after a Labor Board determination that the picketing constituted an unfair labor practice, the Court stated that:

> The fact that the two sections have an identity of language and yet specify two different remedies is strong confirmation of our conclusion that the remedies provided were to be independent of each other. * * * The fact that the Board must first attempt to resolve the dispute by means of a § 10(k) determination before it can move under § 10(b) and (c) for a cease and desist order is only a limitation on administrative power, as is the provision in § 10(k) that upon compliance "with the decision of the Board or upon such voluntary adjustment of the dispute," the charge shall be dismissed. These provisions, limiting and curtailing the administrative power, find no counterpart in the provision for private redress contained in § 303 (a) (4).

342 U.S. at 244, 72 S.Ct. at 239. Appellees assert that *Juneau Spruce* has been eroded by the Court's decision in NLRB v. Radio and Television Broadcast Engineers Union, Local 1212, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961), which clarified the Board's obligation to "determine the dispute" by making an affirmative award of the work between the employees of the competing unions if it holds a § 10(k) hearing. We do not understand that decision to have altered the relationship between § 303 and § 10(k), particularly since the Court expressly reaffirmed the independence of the two approaches to jurisdictional disputes:

> The argument here is that since § 303 (a) (4) does not permit a union to establish, as a defense to an action for damages under that section, that it is entitled to the work struck for on the basis of such factors as practice or custom, a similar result is required here in order to preserve "the substantive symmetry" between § 303(a)(4) on the one hand and §§ 8(b) (4) (D) and 10(k) on the other. This argument ignores the fact that this Court has recognized the separate and distinct nature of these two approaches to the problem of handling jurisdictional strikes. Since we do not require a "substantive symmetry" between the two, we need not and do not decide what effect a decision of the Board under § 10(k) might have on actions under § 303(a) (4). 364 U.S. at 584–585, 81 S.Ct. at 337.

In 1959 Congress amended § 303 by deleting the reiteration of § 8(b) (4) and incorporating the latter section into § 303 by reference. There is no indication that the change was designed to affect the independence of the separate remedy afforded by § 303, and in the absence of an indication of Congressional intent we attach no such significance to the change. Plumbers & Fitters, Local 761 v. Matt J. Zaich Construction Co., 418 F.2d 1054, 1057 (9th Cir. 1969); Public Constructors, Inc. v. Local 400, IBEW, 55 CCH Lab. Cas. ¶ 11,883 (D.N.J.1967); *see* 1959 U.S.Code Cong. & Adm.News, at

p. 2318 *et seq.* Accordingly, we find that appellant stated a cause for action under § 303.

■■ However, since the activity in question is arguably prohibited by § 8 of the National Labor Relations Act it is not subject to state regulations, in the absence of allegations of conduct marked by violence and imminent threats to the public order. Accordingly, appellant's state law claim was appropriately dismissed. San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); Local No. 438, Construction & General Laborers v. Curry, 371 U.S. 542, 546–547, 83 S.Ct. 531, 9 L.Ed.2d 514 (1963); Local 20, Teamsters etc. Union v. Morton, 377 U.S. 252, 257–258, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964). Naturally appellant's request for punitive damages falls with the claim for compensatory relief under state law, since "[p]unitive damages for violations of § 303 conflict with the congressional judgment, reflected both in the language of the federal statute and in its legislative history, that recovery for an employer's business losses caused by a union's peaceful secondary activities proscribed by § 303 should be limited to actual, compensatory damages" [footnote omitted]. Local 20, Teamsters etc. Union v. Morton, *supra,* at 260, 84 S.Ct. at 1258–1259; *see* Ritchie v. United Mine Workers, 410 F.2d 827, 836 (6th Cir. 1969).

The only cause for action available to Harnischfeger derives from § 303 of the Labor Management Relations Act, and the District Court correctly applied ordinary agency standards in determining whether the International Union should be held responsible for the picketing. Riverside Coal Company, Inc. v. United Mine Workers, 410 F.2d 267, 270 (6th Cir. 1969) cert. denied, 396 U.S. 846, 90 S.Ct. 89, 24 L.Ed.2d 95 (1969); Ritchie v. United Mine Workers, *supra,* 410 F.2d at 833. We also observe that the Court was cognizant of our decision in Local Union 984 v. Humko Co., 287 F.2d 231, 241–242 (6th Cir. 1961), cert. denied, 366 U.S. 962, 81 S.Ct. 1922, 6 L.Ed.2d 1254

(1961), in which we relied in part upon the provisions of the international union's constitution in finding that the international participated as a "principal actor" in the secondary boycott there in question.

The court below properly considered the constitution of appellee International Union and heard testimony regarding its interpretation and application. The court· is justified in its conclusion that the constitution should not be taken literally, since under such a construction it would seem to assert jurisdiction over work which the union has never claimed. As the court found:

> Until and unless there is some evidence that this Union has attempted to implement the broad claims of its constitution, I feel that you must accept the testimony of the witnesses, particularly of its International representative, in regard to the meaning, because if he were to read this constitution literally it would mean that there would be continuous conflict between the Sheet Metal Workers and the United Automobile Workers in regard to production of motor vehicles of all kinds and descriptions. It appears without any question that this Union has never asserted any right to any such work.

Record at 14a.

In seeking to establish the responsibility of the International Union, appellant relies not only upon the language of the International Union's constitution, but also upon the fact that Mr. Michael Schneider, the International Union's representative, agreed with Mr. Harold Patten, the business agent for Local 94, that the work in question should be sheet metal workers' work and that Schneider did not instruct the Local to cease picketing. However, the court found that:

> [W]hile Mr. Schneider had been informed of Mr. Patten's thinking, and whereas he undoubtedly knew before the cessation of picketing that there was picketing· going on, it also appears that Mr. Schneider told Mr. Patten that it should not be done, and that he has never asserted and does not claim

**356**

to be able to assert any authority or pressure upon Mr. Patten which would have terminated the picketing in question.

Record at 15a. Under the provisions of Rule 52(a), Fed.R.Civ.P., we are bound by the findings of fact of the trial court unless they are clearly erroneous. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Local Union 984 v. Humko Co., *supra*, 287 F.2d at 237. Appellant asserts in its reply brief that the agency issue is strictly a question of law, since there are no issues of fact in dispute. We disagree with this characterization.

 In NLRB v. International Longshoremen's Union, 283 F.2d 558 (9th Cir. 1960), the court reviewed the cases holding the International liable:'

> In other cases an international union has been considered engaged in a joint enterprise with a local or responsible for the activities of the local and its agents when the International admitted having joined the local in authorizing the general conduct which led to the unfair practices, see Int'l Longshoremen's Union, 79 N.L.R.B. 1487, 1513–14 (1948), when the international advised, sympathized or financially supported such general conduct, Cory Corp., 84 N.L.R.B. 972 (1949), when the International through its constitution or bylaws or by some other means commanded or required the activities resulting in the unfair labor practices, see N.L.R.B. v. Millwrights' Local 2232, 5 Cir., 1960, 277 F.2d 217, 221; American Newspaper Publishers Ass'n, 104 N.L.R.B. 806 (1953), or when the International controlled the operations of the local, see Int'l Brotherhood of Teamsters, etc. v. United States, 4 Cir., 1960, 275 F.2d 610, 612–614.

283 F.2d 558, 565–566; *cf.* United Mine Workers v. Gibbs, 383 U.S. 715, 739, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The court's findings that the International Union did not authorize the picketing; that it advised against the picketing;

that the constitution did not compel the picketing; and that the international representative did not assert or claim to assert authority to terminate the picketing, were not clearly erroneous. We affirm the court's holding that the International is not liable for damages resulting from the picketing. *Cf.* Di Giorgio Fruit Corp. v. NLRB, 89 U.S.App.D.C. 155, 191 F.2d 642, 647–648 (1951), cert. denied, 342 U.S. 869, 72 S.Ct. 110, 96 L.Ed. 653 (1951); but *cf.* NLRB v. Millwrights' Local 2232, 277 F.2d 217, 220–222 (5th Cir. 1960), cert. denied, 366 U.S. 908, 81 S.Ct. 1083, 6 L.Ed.2d 234 (1961).

The judgment is vacated insofar as it found no cause for action against the local union under § 303 and the case is remanded for further proceedings in accordance with this opinion.