BECHTEL CORPORATION and Bechtel Power Corporation, Plaintiffs,

v.

LOCAL 215, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO et al., Defendants.

No. 75–245 Civil.

United States District Court, M. D. Pennsylvania.

Nov. 13, 1975.

James J. Haggerty, Haggerty & Mc-Donnell, Scranton, Pa., Bond, Schoeneck & King, Syracuse, N. Y., for plaintiffs.

Ira H. Weinstock, James L. Cowden, Handler, Gerber & Weinstock, Harrisburg, Pa., for defendants.

SHERIDAN, Chief Judge.

This action arises under the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq. (the Act). Before the court are defendants' motions to dismiss and for a more definite statement. For the purposes of the ruling on the motion to dismiss, the court accepts as true all well pleaded facts in the complaint. *Bonnot v. Congress of Independent Unions, Local 14,* 8 Cir. 1964, 331 F.2d 355; *United States Steel Corp. v. UMW,* W.D.Pa.1970, 320 F.Supp. 743. For the reasons hereinafter given the motion will be granted in part and denied in part.

Plaintiffs (Bechtel) are Bechtel Corporation and Bechtel Power Corporation, the latter being a wholly-owned subsidiary of the former. Bechtel is a general contractor, engaged in the construction of two nuclear power plants, known collectively as the Susquehanna Steam Electric Generating Station in Berwick, Pennsylvania. The work on this eight year project began in late 1973.

Bechtel employs approximately 1200 employees in manual building trades and has contracted with subcontractors who employ approximately 100 additional workers. Wages, hours, and working conditions for plaintiffs' employees are covered by the terms of several collective bargaining agreements entered into between Bechtel or its representative and various unions, including defendant Local 215, Laborers' International Union of North America, AFL-CIO (Local 215), or their international organizations.

According to the complaint, in November 1974, a jurisdictional dispute arose between Local 215 and a local chapter of the Ironworkers' Union concerning the performance of certain work on the project. Thereafter, on December 16 and 17, representatives of Local 215 induced a work stoppage and picketing at the project.

In February 1975, a second jurisdictional dispute arose, this time between Local 215 and a local chapter of the Plumbers and Pipefitters Union. This dispute also resulted in a work stoppage and picketing, for which defendants were responsible.

Bechtel claims damage as a result of these stoppages which, it is asserted,

were in violation of Local 215's contractual obligations as well as the Act. The jurisdiction of the court is grounded on §§ 301 and 303 of the Act, 29 U.S.C. §§ 185 and 187.

## I. INDIVIDUAL DEFENDANTS.

■ The defendants have moved to dismiss the action as to the individual defendants, claiming that the Act confers no jurisdiction over individuals. Bechtel acquiesces in this view:

"  .   .   .   Plaintiffs do not oppose the motion to dismiss insofar as it is directed against these two individuals." Plaintiffs' Br. at 2.

Accordingly, this portion of the motion to dismiss will be granted.

## II. THE "PLAN FOR SETTLEMENT OF JURISDICTIONAL DISPUTES IN THE CONSTRUCTION INDUSTRY" AS A BAR TO THE ACTION.

With regard to this point, defendants have abandoned their motion.

"The defendants do not press this defense at this time." Defendants' Br. at 8.

Accordingly, this portion of their motion will be denied.

## III. ARBITRABILITY OF THE ·CLAIM.

Jurisdiction for this action is grounded on §§ 301 and 303 of the Act. The first section creates a cause of action for a violation of a collective bargaining agreement. 29 U.S.C.A. § 185. The second authorizes a suit for damages, "  .   .   .   subject to the limitations and provisions of section 185   .   .   ," where a labor union causes a strike in furtherance of a jurisdictional dispute with another union in violation of 29 U.S.C.A. § 158(b)(4). 28 U.S.C.A. § 187. See NLRB v. Local 825, Operating Engineers, 1971, 400 U.S. 297, 91 S.Ct. 402, 27 L.Ed.2d 398; Carey v. Westinghouse Electric Corp., 1964, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320.

A. Section 301, 29 U.S.C.A. § 185, claim.

■ This law authorizes unions or employers to sue for damages when a party has violated a collective bargaining agreement.

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C.A. § 185(a).

Thus, parties may bring suit in federal court upon an allegation that a defendant is in breach of a collective bargaining contract.

■■ However, many collective bargaining contracts contain arbitration clauses under which the parties agree to submit grievances arising under the contract to an arbitrator for decision, and the law favors arbitration. Section 203(d) of the Act, 29 U.S.C.A. § 173(d), provides:

"Final adjustment by a method agreed upon by the parties is declared to be the desirable method of settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.  .  .  . "

Therefore, where there is an arbitration clause, the court should order a grievance submitted to arbitration without weighing its merits. United Steelworkers v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L. Ed.2d 1403. An application for such an order should not be denied, unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which covers the dispute. United Steelworkers v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409. All doubts should be resolved in favor of ar-

bitration. *Id.*; *Gateway Coal Co. v. UMW,* 1974, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583; *see NAPA Pittsburgh, Inc. v. Automotive Chauffeurs Local 926,* 3 Cir. 1974, 502 F.2d 321, *cert. denied* 1974, 419 U.S. 1049, 95 S.Ct. 625, 42 L.Ed.2d 644; *Keystone Printed Specialities Co., Inc. v. Scranton Printing Pressmen Union No. 119,* M.D.Pa.1974, 386 F.Supp. 416, *aff'd* 1975, 3 Cir., 517 F.2d 1398. On the other hand, arbitration is a matter of contract, and a party cannot be required to submit a grievance to arbitration that it has not agreed to submit. *John Wiley & Sons, Inc. v. Livingston,* 1964, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898; *R.C.A. v. Association of Scientists,* 3 Cir. 1969, 414 F.2d 893. In summary, if the parties have agreed to submit the issues involved in a lawsuit to arbitration, the court will refer the issues to arbitration and order the parties to carry out their agreement. *Drake Bakeries, Inc. v. Local 50, Bakery Workers,* 1962, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474; *see Affiliated Food Distributors, Inc. v. Local 229, Teamsters,* 3 Cir. 1973, 483 F.2d 418, *cert. denied* 1974, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470; *Boeing Co. v. UAW,* 3 Cir. 1967, 370 F.2d 969. *Compare Drake,* supra, *with Atkinson v. Sinclair Refining Co.,* 1962, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462.

■■ Involved here are two agreements having conflicting arbitration clauses, each of which purports to predominate. Attached to the verified complaint and made the subject of reference therein is a collective bargaining contract between Bechtel and unions affiliated with the Building and Construction Trades Department of the AFL-CIO and the International Brotherhood of Teamsters, dated October 2, 1973, (Local Agreement). Attached to the motion to dismiss[1] is a National Agreement signed November 1, 1973, between the Laborers' International Union of North America and the National Constructors Association (National Agreement). Bechtel is a party to the Local Agreement and a member of the Constructors Association that is a party to the National Agreement. Local 215 is a unit of the International Union which signed the National Agreement and a signatory to the Local Agreement. Thus, both parties appear to be bound by both agreements.

This portion of the lawsuit concerns damages arising from two work stoppages allegedly caused by Local 215. Concerning arbitration, the Local Agreement provides:

"In the interest of uninterrupted progress on any and all work covered by this Agreement, and providing an orderly procedure for binding resolution of all disputes which may arise, the parties hereby agree that all questions or grievances involving the

---

1. A motion to dismiss attacks the complaint. A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80; *accord, Jenkins v. McKeithen,* 1969, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (Plurality Opinion) (Marshall, J.); *Lee v. Hodges,* 4 Cir.1963, 321 F.2d 480, 485. In ruling on such a motion, the court should consider as true all well pleaded facts and reasonable presumptions arising therefrom. *Id.; see Framlau Corp. v. Dembling,* E.D.Pa.1973, 360 F.Supp. 806, 811.

The National Agreement, while referred to in the complaint, is not annexed thereto. However, it is referred to in the complaint, and the sections claimed to be supportive of the defendants' position are not quoted. From this the court might infer that these passages are not contained in the National Agreement. Moreover, the only "copy" of the National Agreement furnished to the court, an unauthenticated version attached to the motion to dismiss, would be excludable under Rule 56(e), Fed.R.Civ.P. The better practice would have been for plaintiffs to set forth the entire contract or to attach that document to the complaint in the first place, *see* 2A Moore's Federal Practice ¶ 8.17[6], thus making it a part of that pleading under Rule 10(c), Fed.R.Civ.P., but since plaintiffs admitted the authenticity of the version proffered by defendants, Br. at 4, it will be considered in ruling on this Rule 12(b)(6), Fed.R.Civ.P. motion.

meaning, interpretation and application of this Agreement, other than trade jurisdictional disputes arising under Article XII or damages arising from any work stoppage or lockout, shall be handled under the following procedures:

"  .  .  .

"*Step 4*. If the parties are unable to effect an amicable settlement or adjustment of any grievance or controversy under this section, then such grievance or controversy shall be submitted to binding arbitration  .  .  ." Article XV.

On the other hand, the National Agreement provides:

"It is specifically agreed that there shall be no strikes, lockouts or cessation or slowdown of work or picketing over any dispute over the application or interpretation of this Agreement, and that all grievances and disputes, excluding jurisdictional disputes, shall be handled as hereinafter provided. "  .  .  .

"C. Failing in settlement under [the above procedure]  .  .  ., the matter shall be referred to a Board of Arbitration  .  .  ." Article XIII.

Concerning conflicts between the two contracts, the Local Agreement provides:

"The provisions of this Agreement shall apply to the construction of the Susquehanna Steam Electric Generating Station, notwithstanding provisions of local or national union agreements which may conflict or differ with the terms of this Agreement. .  .  ." Article II.

In the face of this, the National Agreement provides:

"This Agreement shall apply on all construction projects within the United States performed by the Employer or by any person, firm or corporation owned or financially controlled by the Employer.

"Where the provisions of Local Union agreements conflict with the terms of this Agreement, the provisions of this Agreement shall prevail." Article I.

Thus, the issues being litigated here are subject to arbitration under the National Agreement, but are excluded from arbitration under the Local Agreement; and each agreement provides for its own superiority.

■ The later contract, the National Agreement, prevails. In adjudicating collective bargaining contracts, courts should use principles of general contract law. *Jersey Central Power & Light Co. v. Local 327, IBEW*, 3 Cir. 1975, 508 F. 2d 687, 703 n. 45; *see Stillpass Transit Co. v. Teamsters Local 103*, 6 Cir. 1967, 382 F.2d 940. When two parties or their privies make a new agreement that is inconsistent with terms of a previous one dealing with the same subject matter, the later agreement operates to rescind and to discharge by substitution the inconsistent parts of the earlier contract. *Jersey Central Power & Light Co. v. Local 327, IBEW, supra; Port of Seattle v. United States*, 1971, 450 F. 2d 1363, 1378, 196 Ct.Cl. 333; 6 Corbin on Contracts § 1296 (1962); Restatement of Contracts § 408.

Here, the inconsistency is between the "Scope of Agreement" clauses set out supra. Each says that its contract predominates in case of a conflict with the other.

Since the National Agreement is later, covers the same subject matter, and is between the same parties or their representatives, its "Scope of Agreement" clause controls over the prior inconsistent clause. Since the National Agreement "Scope of Agreement" clause predominates, the National Agreement arbitration clause governs to the extent it contradicts the clause in the prior Local Agreement. The Local Agreement excludes jurisdictional disputes and "  .  .  . damages arising from any work stoppage or lockout  .  .  ." from arbitration. The National Agree-

ment excludes only jurisdictional disputes. Therefore, under the National Agreement "Scope of Agreement" clause, only jurisdictional disputes are excluded from arbitration. It follows then, that the dispute here sought to be litigated—for damages arising from a work stoppage—should be resolved through the grievance procedure provided in the collective bargaining contract, by arbitration.

Since the claim for damages for an alleged work stoppage is a matter subject to arbitration under the collective bargaining agreement between the parties, the action will be stayed and the parties directed to submit the matter to arbitration.

B. § 303, 29 U.S.C.A. § 187, claim.

In this section Congress has created a cause of action for damages when a union has engaged in conduct in violation of § 8(b)(4) of the Act, 29 U.S.C.A. § 158(b)(4). Section 303 provides:

"(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

"(b) Whoever shall be injured in his business or property by reason or [So in original. Probably should read "of."] any violation of subsection (a) of this section may sue therefor in any district court of the United States . . . and shall recover the damages by him sustained and the cost of the suit. . . . "

Thus, conduct violative of § 8(b)(4) of the Act is made actionable by § 303.

Section 8(b)(4) makes it an unfair labor practice for a union to coerce an employer to assign work to its members rather than to other employees.

"(b) It shall be an unfair labor practice for a labor organization or its agents—

. . .

(4)(i) to engage in . . . a strike . . . ; or (ii) to threat-

en, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

. . . . . .

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization . . . rather than to employees in another labor organization . . . , unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work. . . . " 29 U.S.C.A. § 158.

Defendants ask that this proceeding be stayed pending arbitration of the issue whether the contract allocated the work over which they allegedly struck to Local 215 or to other unions.

The first issue which the court must address concerns the arbitrability of the § 303 claim. The claim for damages caused by the union's alleged conduct in violation of § 8(b)(4)(D) is not a matter to be resolved by arbitration under the parties' collective bargaining agreements.

■ Section 301 actions arise *ex contractu*. They revolve around breaches of a collective bargaining agreement. The federal policy of deference to the expertise of labor arbitrators is bottomed on the concept that they are capable of construing labor contracts in accordance with "industrial common law" to an extent greater than a legal tribunal. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 1960, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 4 L.Ed.2d 1409. Thus, § 301 actions should be referred to arbitration when there is an arbitration clause unless the clause is not susceptible of an interpretation which covers the dispute. *Id.*

■ The showing required for the arbitrability of § 303 claims, however, is much more difficult. For such a claim to be arbitrable, the arbitration clause must clearly and explicitly state that the

arbitrator is to hear and determine claims in tort. *Vulcan Materials Co. v. United Steelworkers*, 5 Cir. 1970, 430 F. 2d 446, *cert. denied* 1971, 401 U.S. 963, 91 S.Ct. 974, 28 L.Ed.2d 247; *Old Dutch Farms, Inc. v. Milk Drivers Local 584*, 2 Cir. 1966, 359 F.2d 598, *cert. denied* 1966, 385 U.S. 832, 87 S.Ct. 71, 17 L. Ed.2d 67; *Twin Excavating Co. v. Local 731, Excavating*, 7 Cir. 1964, 337 F.2d 437. This is logically so, because courts are not less competent than labor arbitrators "to determine whether particular union activities violate a federal labor statute or to assess the extent of an employer's business remedies." *Old Dutch Farms, Inc. v. Milk Drivers Local 584*, supra, 359 F.2d at 603; *see* Fleming, Arbitrators and Remedy Power, 1962, 48 Va.L.Rev. 1199, 1220; *see also Drake Bakeries Inc. v. Local 50, Bakery Workers*, 1962, 370 U.S. 254, 267, 82 S.Ct. 1346, 8 L.Ed.2d 474 (Harlan, J., dissenting).

Here, under either agreement, the matter is not referable to arbitration. The National Agreement is silent on the subject of § 303 damage actions; under the law as set forth in the preceding paragraph, therefore, this agreement would not require submission of the matter to arbitration. The arbitration clause of the Local Agreement specifically excludes from the purview of arbitration "damages arising from any work stoppage or lockout . . . ." Hence, neither agreement provides the necessary predicate for a reference of the matter to arbitration.

A second issue with which the court must concern itself provides a far more complicated problem, that is whether, given the fact that the arbitrator has no jurisdiction over the § 303 claim, the court should nevertheless stay[2] the § 303 proceeding pending the arbitrator's determination of the jurisdictional dispute. For the reasons hereinafter set forth, this action will be stayed to allow the parties a reasonable time to secure that determination.

■ The conduct which gives rise to a § 303 cause of action also constitutes an unfair labor practice under § 8(b)(4)(D) of the Act. 29 U.S.C.A. § 158(b)(4)(D).

"Section 8(b)(4)(D) and § 303(a) (4) are substantially identical in the conduct condemned. Section 8(b)(4) (D) gives rise to an administrative finding; § 303(a)(4), to a judgment for damages. . . . ." *International Longshoremen's Union v. Juneau Spruce Corp.*, 1952, 342 U.S. 237, 243–44, 72 S.Ct. 235, 239, 96 L.Ed. 275 (footnote omitted).

Thus, if a union engages in a strike, the purpose for which is the unlawful coercion of the employer to assign work to members of the union rather than to other workers, the union commits an unfair labor practice as well as a tort.

In determining whether the union has engaged in conduct made actionable by § 303, it is appropriate to look to decisional law which has developed in proceedings to enforce unfair labor practice charges under § 8(b)(4)(D). *Painters District Council 38 v. Edgewood Contracting Co.*, 5 Cir. 1969, 416 F.2d 1081; *Riverside Coal Co., Inc. v. UMW*, 6 Cir. 1969, 410 F.2d 267, *cert. denied* 1969, 396 U.S. 846, 90 S.Ct. 89, 24 L.

2. The court recognizes that the procedure utilized by the only other courts to address themselves to this issue has been to refuse a stay at this stage of the proceedings, but to entertain a motion for a continuance if arbitration has not been completed by the time of trial. *Franchi Construction Co. v. Local 560, Hod Carriers*, D.Mass.1965, 248 F.Supp. 131; *United States Steel Corp. v. Seafarers' Union*, E.D.Pa.1965, 237 F.Supp. 529. The stated rationale for each of these decisions was to allow discovery on the § 303 claim to go forward during the pendency of the arbitration. This court suggests that such a result would be inappropriate in this particular case since discovery on the liability portion of the § 303 claim will be substantially the same as the discovery required for the parties to prepare their respective cases for the arbitrator, and the additional discovery needed for the damage portion of the claim— to the extent that it is not a product of discovery on liability—can await the return of the arbitrator's decision. A decision adverse to the company will make further discovery unnecessary.

Ed.2d 95; *Lescher Building Service, Inc. v. Local 133, Sheet Metal Workers,* 7 Cir. 1962, 310 F.2d 331, 335; *Local 978, United Brotherhood of Carpenters v. Markwell,* 8 Cir. 1962, 305 F.2d 38, 40 n.1; *Carpenters Local 131 v. Cisco Construction Co.,* 9 Cir. 1959, 266 F.2d 365, cert. denied 1959, 361 U.S. 828, 80 S.Ct. 75, 4 L.Ed.2d 70; *e.g., Haughton v. International Woodworkers,* D.Or.1958, 168 F.Supp. 273, *aff'd sub nom., Haughton v. Columbia River District Council 5,* 9 Cir. 1961, 294 F.2d 766; Ratner, *National Labor Policy,* 1965, 38 F.R.D. 81, 87.

"It has long been recognized that § 8(b)(4) is the counterpart of § 303(a) and therefore the same tests and rationale apply to both in regard to the facts necessary to give rise to the relief specified in each. Only the relief specified differs." *Riverside Coal Co. v. UMW,* supra, 410 F.2d at 272 n.3 (citations omitted).[3]

Thus, the court may look to law under § 8(b)(4)(D) as it has been applied to conduct of unions engaging in jurisdictional strikes.

If a union strikes for a work assignment and is found to be entitled to the work, the § 8(b)(4)(D) case evaporates, and the charges filed against the union will be dismissed. *ITT v. Local 134, IBEW,* 1975, 419 U.S. 428, 95 S.Ct. 600, 42 L.Ed.2d 558. This is because if a union has the right to perform certain work, it may use the "traditional right of self help," *Rotenberg v. Plumbers Local 15,* D.Minn.1969, 304 F.Supp. 880, 884, in order to coerce the

employer into the assignment of that work to its members. *NLRB v. Radio Engineers Local 1212,* 1961, 364 U.S. 573, 577 n.12, 81 S.Ct. 330, 5 L.Ed.2d 302; *NLRB v. Des Moines Electrotypers' Union No. 84,* 8 Cir. 1961, 291 F.2d 381; *Rotenberg v. Plumbers Local 15,* supra. This forms an exception which has been engrafted onto the law by the NLRB, *see NLRB v. Radio Engineers Local 1212,* supra, 364 U.S. at 577 n.12, 81 S.Ct. 330. A valid right to the work, therefore, is a defense in an unfair labor practice proceeding. *Harbor Watchmen Local 26 and American Plant Protection, Inc.,* 1974, 210 NLRB No. 79; *Printing Pressmen's Local 44 and Valley Publishing Co.,* 1961, 131 NLRB No. 133.

A contract right to the work is only one factor considered by the NLRB in determining entitlement to disputed work. *Local 1743, Machinists and J. A. Jones Construction Co.,* 1962, 135 NLRB No. 139; NLRB, Jurisdictional Dispute Proceedings, 1974, 39th Annual Report 114, 115–19. Other factors include skills to perform the work, custom and practice in the industry and area, trade jurisdiction, substitution of function. *New Orleans Typographical Local 17 v. NLRB,* 5 Cir. 1966, 368 F.2d 755. *See NLRB v. St. Louis Printing Pressmen Union No. 6,* 8 Cir. 1967, 385 F.2d 956; *NLRB v. Local 1291, Longshoremen,* 3 Cir. 1966, 368 F.2d 107, cert. denied 1967, 386 U.S. 1033, 87 S.Ct. 1482, 18 L.Ed.2d 595. *See also NLRB v. Local Union No. 3, IBEW,* 2 Cir. 1964, 339 F.2d 145. Additional

---

3. This result is not contradicted by the Deena Artware cases where the same panel of the Sixth Circuit affirmed a district court's determination that a union's strike violated § 303 while simultaneously enforcing the NLRB's finding that the strikers did not lose the protection arising out of § 152(3) because the same strike was not in violation of § 8(b)(4)(D). *Compare United Brick Workers v. Deena Artware, Inc.,* 6 Cir.1952, 198 F.2d 637, cert. denied 1952, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694 *with NLRB v. Deena Artware, Inc.,* 6 Cir.1952, 198 F.2d 645, cert. denied 1953, 345 U.S. 906, 73 S.Ct. 644, 97

L.Ed. 1342. These factual conclusions, reasoned the court, were not fatally inconsistent since they were based on the decisions of two different factfinders, each acting within its own area of competence on the separate and not necessarily overlapping presentations of evidence by different counsel. Neither result was interposed in the other proceeding. The court held that the law should be the same in both cases and that so long as each factual conclusion was supported by sufficiently substantial evidence an appellate court could not set it aside.

factors considered by the NLRB include considerations of safety and economy and the employer's own preferences as expressed by his assignment of the work to a particular union. Longshoremen's Local 19 and Operating Engineers Local 302, 1963, 144 NLRB No. 138. Hence, a colorable contract right to the work does not end the inquiry.

■ A jurisdictional strike is not favored, and the union strikes at its peril. The right to perform work pursuant to a collective bargaining agreement, even buttressed by an arbitrator's award of the work to the striking union is not a defense to an unfair labor practice charge under 8(b)(4)(D) if the NLRB ultimately decides that another collective bargaining unit is entitled to the work. *NLRB v. Local 1291, Longshoremen,* 3 Cir. 1965, 345 F.2d 4, *cert. denied* 1965, 382 U.S. 891, 86 S.Ct. 183, 15 L.Ed.2d 149; *NLRB v. Local 825, Operating Engineers,* 3 Cir. 1964, 326 F.2d 213; *Douds v. ILA,* 2 Cir. 1957, 242 F.2d 808; *see Mason-Rust v. Laborers' Local 42,* 8 Cir. 1970, 435 F.2d 939. Moreover, a union's acquiescence in an order of the NLRB awarding disputed work to the rival union or other group of employees —which would for a defense in an unfair labor practice proceeding, *see* 29 CFR § 102.91 is no defense to a § 303 suit for damages caused by a strike *prior* to the NLRB order by the union which did not win the work award. *Harnischfeger Corp. v. Sheet Metal Workers International Association,* 6 Cir. 1970, 436 F.2d 351. In summary, absent a statutory exception such as a certification order of the NLRB, *see Henderson v. Longshoremen's Local 50,* 9 Cir. 1972, 457 F.2d 572, *cert. denied* 1972, *Pacific Maritime Assn. v. NLRB,* 409 U.S. 852, 93 S.Ct. 65, 34 L.Ed.2d 95 a strike by a union to compel a work assignment to its members will cause the union to be liable for damages unless the union is ultimately determined to be entitled to the work.

■ The disfavor with which the law views jurisdictional strikes is in derogation of the federal policy against governmental interference with the concerted activity of labor, 29 U.S.C.A. § 102, *see* 29 U.S.C.A. § 104, but it is a logical extension of the regulatory scheme in this area. Section 10 of the Act, 29 U.S.C.A. § 160, provides a simplified mechanism for the speedy resolution of jurisdictional disputes. When there is such a dispute, upon the application of an interested party, the NLRB is "empowered and directed to hear and determine the dispute out of which" the jurisdictional strike occurred unless within ten days of the filing of the charge, the parties resolve the dispute or agree upon a method for its voluntary adjustment. 29 U.S.C.A. § 160(k). In determining the dispute, the NLRB is to make an affirmative assignment of the disputed work. NLRB, Jurisdictional Dispute Proceedings, 1974, 39th Annual Report 114. Upon the filing of such a complaint, if after preliminary investigation the officer to whom the matter has been referred has reasonable cause to believe that the charges in the complaint are true, the NLRB may petition the court for a temporary restraining order or a preliminary injunction. 29 U.S.C.A. § 160(*1*). So long as the court determines that there is a reasonable cause, it has the power to enjoin the strike, and whether the union is entitled to the work is not at issue in the suit. *Schauffler v. Local 1291, Longshoremen,* E.D.Pa.1960, 188 F.Supp. 203, *aff'd in part and rev'd in part on other grounds* 3 Cir. 1961, 292 F.2d 182; *Dooley v. Local 107, Teamsters,* D.Del.1960, 182 F. Supp. 297. Thus, Congress has created an alternative to the jurisdictional strike,[4] and by § 303 intended to deter it. *See* Cong.Rec. 5060 (remarks of

4. Moreover, the law encourages parties to set up their own private mechanisms to resolve jurisdictional disputes. *See* 29 U.S.C.A. § 108, 141, 160(k). Here, the parties had such a procedure, the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry, a procedure used "to decide . . . which union is entitled to . . . disputed work," Defendants' Br. at 12; *see* Plaintiffs' Br. at 10–11, of which neither party availed itself.

Senator Taft). *See also* Bernstein, 1965, *Jurisdictional Dispute Arbitration,* 78 Harv.L.Rev. 784, 796, in which the author appears to suggest that an alternative for a union which contends that it has the right to disputed work should be a § 301 claim for damages. *Accord, Local No. 5, Journeymen v. NLRB,* 1963, 116 U.S.App.D.C. 100, 321 F.2d 366, 370. In conclusion, there is a very limited defense to a § 8(b)(4)(D) charge —a finding of entitlement to the work at issue.

▉▉▉ By analogy this defense should be available to the defendant in a § 303 action.[5] In order to determine whether this defense may be made out from the facts in this case, it is necessary to determine which labor union was entitled to the work for which Local 215 engaged on a job action.

The law recognizes that labor arbitrators have special abilities in resolving labor disputes.

". . . The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequences to the morale of the shop, his judgment whether tensions will be heightened or diminished. . . . The ablest judge cannot be

expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 1960, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409.

"When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. . . . He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 1960, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed. 2d 1424.

Thus, in unfair labor practice proceedings, if there is an arbitration clause covering the dispute, the NLRB defers to arbitration. *Carey v. Westinghouse Electrical Corp.,* 1964, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320; *Raley's Inc. and Building Service Employees Local 22,* 1963, 143 NLRB No. 40; e.g., Pacific Tile & Porcelain Co. and Local 487, Brickworkers, 1962, 137 NLRB No. 169. In a like manner, the court is satisfied that the opinion of the arbitrator as to which union is entitled to the work for which Local 215 struck will have a beneficial effect on these proceedings.

It follows that the § 303 claim should be stayed to allow the parties to secure the ruling of an arbitrator.

---

5. This may seem, at first blush, at variance with a dictum in *NLRB v. Radio Engineers, Local 1212,* 1960, 364 U.S. 573, 584, 81 S.Ct. 330, 337, 5 L.Ed.2d 302: ". . . § 303 (a)(4) does not permit a union to establish, as a defense to an action for damages under that section, that it is entitled to the work struck for on the basis of such factors as practice or custom." The holding in that case, however, was that such evidence *could* be adduced at a hearing to enjoin a violation

of § 8(b)(4)(D). Time, the repeal of § 303(a)(4), and the incorporation into § 303 of a direct reference to § 8(b)(4) dictate that the two sections are not to be treated differently in this respect. *Riverside Coal Co. Inc.,* supra, holds that the same "tests and rationale" should be applied to the facts under each section, 410 F.2d at 272 n.3. In both § 303 and § 8(b)(4)(D) proceedings the union may offer evidence to prove it was validly entitled to the work for which it struck.

## IV. MOTION FOR A MORE DEFINITE STATEMENT.

Due to the posture of this case, and for the reasons stated in footnote 2, defendants' motion for a more definite statement will be denied without prejudice to a renewal following arbitration.

An order will be entered accordingly.