Joseph T. SMALL, et al., Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, et al., Defendants.

Civ. A. No. C–1–85–914.

United States District Court, S.D. Ohio, W.D.

Nov. 6, 1985.

Paul H. Tobias, Tobias & Kraus, Cincinnati, Ohio, for plaintiffs.

Thomas F. Phalen Jr., Cincinnati, Ohio, Gary A. Snyder, Dayton, Ohio, for defendants.

## MEMORANDUM AND ORDER

DAVID S. PORTER, Senior District Judge:

Plaintiff brought this action against defendants Local 212 (hereinafter Local), and International Brotherhood of Electrical Workers (hereinafter International) alleging violation of the unions' duty of fair representation, and violation of Sections 101(a)(1), 401(h) and (i), and 404 of the Labor Management Reporting and Disclosure Act of 1959 (hereinafter LMRDA). The case is before the Court on defendant Local's partial motion to dismiss Count IV of the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (doc. 6), and defendant International's 12(b)(1) and (6) motion to dismiss the complaint against them (doc. 7). Plaintiff has filed memoranda in opposition to both motions (docs. 10 and 12).

Both plaintiffs and the International have filed exhibits extraneous to the pleadings for us to consider in conjunction with the 12(b)(6) motion. As we are permitted to do under the rule, we will consider the motion on the pleadings and supporting memoranda alone and exclude the extraneous material.

We are aware that 12(b)(6) motions are granted sparingly, *Pessin v. Keeneland Assoc.*, 45 F.R.D. 10 (E.D.Ky.1968). Moreover, the complaint must be liberally construed, *Davis H. Elliott Co., Inc. v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176 (6th Cir.1975), and viewed in a light most favorable to the nonmoving party. Finally, the standard for dismissal must be scrupulously applied. It must appear beyond a doubt from the complaint that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *quoting, Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Keeping these considerations foremost in mind, the facts, construed in a light most favorable to the plaintiffs, are the following: The plaintiffs in this case are all electricians and members of Local 212. Local 212 is affiliated with the International. The plaintiffs are challenging two aspects of the Local's activities. First, the Local administers a hiring hall pursuant to a collective bargaining agreement signed by area contractors. Complaint ¶ 5. The agreement contains clear procedures for the nondiscriminatory referral of members for work according to the chronological order of the names that appear on the referral list. *Id.* Plaintiffs allege that the Local has violated the collective bargaining agreement by failing to call members in chronological order, and by other acts of favoritism. *Id.* ¶ 6. Plaintiff further alleges that the Local has been acting arbitrarily, in bad faith, and grossly negligent in the operation of the referral system. *Id.* ¶ 7. Plaintiffs also challenge the Local's implementation of a program entitled, "Market Recovery Agreement" (hereinafter Program). *Id.,* ¶ 10. The Program was established in 1983 to refer Local

members to jobs paying $9.10 per hour, less than one-half the union wage set forth in the collective bargaining agreement. *Id.* Plaintiffs allege that the Local implemented the Program without a vote of the membership, nor the approval of the executive board or the International president. *Id.* ¶ 11. Additionally, all appeals to the International that have challenged the Program have been handled perfunctorily. *Id.* ¶¶ 9 and 12.

Finally, plaintiffs allege that the two activities, operating a referral service and implementing the Program, have been handled under the guidance of William Rothert, the Local's business manager. *Id.* § 14. Rothert has allegedly harassed and threatened the plaintiffs for their repeated challenges to the Local's activities. *Id.* ¶ 17. Appeals to the International regarding Rothert have been unsuccessful, and moreover, plaintiffs allege, the International's constitution does not contain adequate procedures to remove Rothert. *Id.* ¶¶ 15 and 16.

We find that based on these facts, the International cannot be held liable in this case, and grant its motion to dismiss. We therefore deal with its 12(b)(6) motion first. We also grant the Local's 12(b)(1) motion and hold that we do not possess subject matter jurisdiction over Count IV of the plaintiffs' complaint.

■ It has long been held that an international union is not *per se* responsible for the actions of its local. *Kazor v. General Motors Corp.*, 585 F.Supp. 621, 118 L.R. R.M. 2622 (E.D.Mich.1984). *See United Mine Workers of America v. Coronado Coal Co.*, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922); *Shimman v. Frank*, 625 F.2d 80 (6th Cir.1980). An important policy militates strongly against imposing absolute vicarious liability on international labor organizations. Every year, many cases involve breach of the union's duty to represent fairly members of the bargaining unit. A rule of absolute vicarious liability would expose international unions to a multiplicity of damage awards and have an unpredictably destructive effect on organized labor.

*Mauget v. Kaiser Engineer, Inc.*, 105 L.R. R.M. 3374 (S.D.Ohio 1980). In a long line of cases, this Circuit has refused to hold international unions vicariously liable to employers without a showing of authorization or ratification, *United Steelworkers v. Lorain, A Division of Koehring Co.*, 616 F.2d 919 (6th Cir.1980), *cert. denied sub nom. Lorain v. United Steelworkers*, 451 U.S. 983, 101 S.Ct. 2313, 68 L.Ed.2d 839 (1981); *Buckeye Power, Inc. v. Utility Workers Union*, 607 F.2d 759 (6th Cir. 1979); *Walters v. International Ass'n of Plumbers and Steamfitters*, 323 F.2d 578 (6th Cir.1963). Recently, this same rule was applied in a member-union relationship, *Shimman v. Frank*, 625 F.2d 80 (6th Cir.1980).

*Shimman* involved the alleged beating of a union dissident upon the instructions of a local union official. The Sixth Circuit reversed the district court's finding that the international union was vicariously liable. The court held that the international could not be held liable absent authorization, encouragement, or ratification of the offensive conduct. The Court adopted the rule enunciated in the Supreme Court case, *United Mine Workers of America v. Coronado Coal Co.*, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1921) *opinion after remand*, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963 (1923), in which the Supreme Court applied agency principles to find the international not liable for the unauthorized strike of the local. The *Shimman* court rejected the argument that the *Coronado* rule only applied in strike situations, *Shimman*, 625 F.2d at 95, and held that agency principles applied equally to employer-union disputes. Applying agency principles, the court found that the international was a separate body from the local. The acts of the agent could not be imputed automatically to the international. Under the union's constitution, local unions governed themselves, called strikes on their own, elected their own officers, passed their own by-laws, transacted business and disciplined members. *Id.* at 97. The Court refused to impute agency merely on the basis of the

international's retention of substantial regulatory and supervisory powers, *id.*, and held that to do so would ignore the local's substantial autonomy in handling its own affairs. *Id.* at 98.

In *Buckeye Power, Inc. v. Utility Workers Union*, 607 F.2d 759 (6th Cir.1979), an illegal strike case, the court expressed the rule in a slightly different way, and stated that an international union could not be liable for the illegal conduct of one of its local unions where the plaintiff's complaint centered on the *inaction* of the international. *Id.* at 763, *citing Harnischfeger Corp. v. Sheet Metal Workers, Inc.*, 436 F.2d 351 (6th Cir.1970). *See also Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979).

█ In the case at bar, plaintiff alleges no facts from which we could find the International liable for the acts of the Union. The International did not authorize, encourage, or ratify the acts of the Local. The complaint merely alleges that the International failed to take action on two accounts: that the International arbitrarily failed to respond to "charges, complaints and appeals" regarding the Local's defective referral system (Complaint ¶ 9), and that despite the fact that the Market Recovery Agreement was implemented without approval by the International President in direct violation of the International constitution, the International ignored charges and appeals concerning the Program filed by Union members (*Id.*). The International's failure to act could in no way constitute encouragement or ratification.

The doctrine of ratification provides that a contract made by an agent without authority may, by words, conduct or silence, subsequently be approved by the principal, retroactively conferring authority on the agent. *E.g., 2 Williston on Contracts* § 278 (1959 & 1981 Supp.). The doctrine only applies if the transaction is originally entered into on behalf of a principal, who subsequently ratifies it, and the person making it represents himself as the principal's agent. *Id.*

*Bruffey Contracting Co. v. Burroughs Corp.*, 522 F.Supp. 769, 774–75 (D.Md. 1981), *aff'd* 681 F.2d 812 (4th Cir.1982).

In the instant case the plaintiffs have made no allegations that the referral program or Market Recovery Agreement were initiated for the benefit of the International, nor that the International subsequently approved the Local's activities. Rather, all that is alleged is that the International failed to respond to grievances and complaints filed with it. We decline to impose vicarious liability on the International merely because it failed to act. *See Carbon Fuel Co. v. United Mine Workers, supra.*

Plaintiff alleges that an agency relationship arose between the International and the Local as a result of the degree of control the International possessed over the Local's activities. As support for this contention, plaintiff enumerates several provisions in the Union's constitution which reserve to the International a broad range of control over the Local's activities (Plaintiffs' Memorandum in Opposition, Doc. 12 at 4–6). It is in this regard that we are most reluctant to grant the International's motion to dismiss. The degree of control an International has over its locals has been held to be a basis upon which to hold the International liable for the acts of its locals. *See International Union of Operating Engineers v. Metropolitan Gill-Tecon*, 400 F.2d 261, 263 (10th Cir.1968) ("The international is not entitled to the best of both worlds—on the one hand being able to swing its weight, and on the other being able to avoid responsibility therefor.").

However wary we are of dismissing the International solely on the basis of the pleadings, we are persuaded that permitting additional evidence on the issue of control would not be fruitful in the present case. Plaintiff has made no allegation that the referral program or Market Recovery Agreement was anything but a program run by the Local in its independent capacity. No possible addition of proof could alter our view that these programs were not controlled by, nor were they run for the

International. Our conclusion is reinforced by *Wentz v. IBEW*, 578 F.2d 1271 (8th Cir.), *cert. denied*, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 655 (1978). In *Wentz* the Eighth Circuit specifically examined this International's constitution and affirmed the district court, which said, "While the power of the International over the affairs of the Local is considerable, it is no more pervasive than typically has been involved in cases in which it has been held that locals and national or international unions are separate entities." *Id.* at 1272.

Since we can see no possible result other than the International's dismissal from the case, there is no reason to delay our decision to a later stage in the proceedings. We therefore grant the International's motion and dismiss it from the complaint.

We now turn to the Local's motion to dismiss Count IV of plaintiff's complaint. Count IV alleges violations of Sections 401(h) and (i) and Section 404 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 481(h) (1982).

Section 401(h) of the LMRDA states:

If the Secretary [of Labor], upon application of any member of a local labor organization, finds after hearing in accordance with the [Administrative Procedure Act] that the constitution and bylaws of such labor organization do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, such officer may be removed, for cause shown and after notice and hearing, by the members in good standing voting in a secret ballot conducted by the officers of such labor organization in accordance with its constitution and bylaws insofar as they are not inconsistent with the provisions of this subchapter.

29 U.S.C. § 481(h) (1982). Section 401(i) authorizes the Secretary to "promulgate rules and regulations prescribing minimum standards and· procedures for determining the adequacy of the removal procedures to which reference is made in subsection (h)...." *Id.* § 481(i).

Neither the plaintiff nor the defendant has offered cases interpreting § 401(h) and we have not found any exactly on point.[1] However, § 402, dealing with enforcement procedures of § 401, by its terms applies equally to election complaints as well as to the removal of union officers. Section 402 states:

A member of a labor organization—

\* \* \* \* \* \*

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization *pertaining to the election and removal of officers* ).

29 U.S.C. § 482(a) (1982). (Emphasis added.) *See Martire v. Laborers' Local Union 1058*, 410 F.2d 32, 36 n. 8 (3d Cir.) (Section 401(h) "by its terms, as does § 402 ... dealing with enforcement of § 401, directs aggrieved union members to seek relief from the Secretary of Labor rather than by a civil action under the LMRDA."), *cert. denied*, 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969).

In fact, under authority of § 402 the Secretary has promulgated regulations dealing with the procedure for removal of officers, 29 C.F.R. §§ 417.1–.2 (1985), as well as election requirements, 29 C.F.R. §§ 452.1–.138 (1985).

The defendant has argued persuasively that since § 402 applies equally to election complaints and the removal of officers, the election cases interpreting § 402 are in-

---

**1.** We note as an aside that although we have found no cases exactly on point, 401(h) has been interpreted in a different context in at least one case. In *Donovan v. Hotel, Motel & Restaurant Employees,* 700 F.2d 539 (9th Cir.1983), the court scrupulously reviewed the legislative history of the LMRDA to hold that the Secretary of Labor may not intervene in union removal pro- ceedings absent a finding that the union's constitution and bylaws provide inadequate removal procedures. Our reading of *Donovan* strongly suggests that the Court took for granted that the Secretary may intervene in a situation, as is alleged by the plaintiff to exist in the present case, in which union removal procedures are inadequate.

structive in analyzing the case at bar. Plaintiff all but concedes this point arguing simply that "in the absence of authority to the contrary this Court may consider Count IV of Plaintiffs' Complaint." (Plaintiffs' Memorandum in Opposition at 7).

It seems eminently reasonable that we should apply the election cases to the case at bar. The Supreme Court has interpreted § 402 on several occasions.

In *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), the Supreme Court held that challenges to election proceedings under the LMRDA are governed exclusively by § 402. The Court noted that § 402 permits an individual union member to file a complaint with the Secretary of Labor challenging the validity of an election because of violations of LMRDA. If the Secretary finds probable cause to believe there has been a violation, he may file suit in the appropriate district court. *Id.* 140, 85 S.Ct. at 296. The Court stated:

> It is apparent that Congress decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest. Cf. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 242 [79 S.Ct. 773, 778, 3 L.Ed.2d 775]. In so doing Congress ... decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV [of the LMRDA]. Reliance on the discretion of the Secretary is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about settlement through discussion before resort to the courts.

*Id.* The Court thus held that a private individual may not initiate a private suit to set aside an election. This view was subsequently reaffirmed in *Wirtz v. Local 153, Bottle Blowing Ass'n*, 389 U.S. 463, 475, 88 S.Ct. 643, 650, 19 L.Ed.2d 705 (1968) where the Court recognized that in giving exclusive authority to the Secretary to bring suit challenging union election proceedings, "Congress emphatically asserted a vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." Even the standard for review of the Secretary's decision not to bring a civil suit to set aside elections evidences the deferential approach the Court has taken in § 402 cases.

> Except in what must be the rare case, the court's review should be confined to examination of the "reasons" statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious. Thus, review may not extend to cognizance or trial of a complaining member's challenges to the factual basis for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election.

*Dunlop v. Bachowski*, 421 U.S. 560, 572–73, 95 S.Ct. 1851, 1860, 44 L.Ed.2d 377 (1975).

■ There is no reason whatsoever to conclude that the careful enforcement scheme established in § 402 should not apply equally to complaints arising under § 401(h) involving the removal of union officers guilty of serious misconduct. As noted earlier, the statute itself directs a § 401(h) complainant to seek relief from the Secretary of Labor. Since the Supreme Court has stated unequivocally that the enforcement scheme outlined in § 402 is an exclusive remedy in cases involving election complaints, we are convinced the same result in this case is required.

■ We therefore hold that this Court has no jurisdiction over plaintiffs' § 401(h) claims, that these claims must initially be presented to the Secretary, and that the Secretary must determine whether or not to bring a challenge to the defendants' officer removal procedures in this Court.

## ORDER

For the foregoing reasons, defendant International's motion to dismiss the complaint against them is hereby granted, and defendant Local's motion to dismiss Count ·IV of plaintiffs' complaint is granted.

SO ORDERED.