UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, Plaintiff-Appellant,

v.

GENERAL STEEL INDUSTRIES, INC., and The Equitable Life Assurance Society of the United States, Defendants-Appellees.

No. 73–1675.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1974.

Decided June 14, 1974.

Carl Frankel, United Steelworkers of America, Pittsburgh, Pa., for plaintiff-appellant.

Edward K. Fehlig, St. Louis, Mo., for defendants-appellees.

Before GIBSON, BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This appeal raises the principal question of whether the Insurance Plan,[1] Pension Plan, and Supplemental Unemployment Benefit Plan, which were covered by separate agreements but referred to in an Employer-Union basic collective bargaining agreement, are governed by the arbitration provisions in the basic agreement.

The dispute giving rise to this law suit arose a few months after the agreements involved were signed. In mid-December, 1972, appellee (Employer) announced its decision to permanently close two plants for economic reasons, including its St. Louis Car Division plant at which appellant (Union) represented a production and maintenance unit. On December 28, 1972, Employer mailed letters to each of its 500 employees already in a lay-off status advising them that their employment had been terminated effective December 15, 1972.

On January 4, 1973, the Union filed a grievance in behalf of all union members who received the termination letters, alleging that the company had violated the existing collective bargaining agreement "by the sending of such notices and by the actions purported to be taken thereunder, including attempted termination of employees' services and termination of certain insurance and other benefits." The Union did not dispute the Employer's right to close the plant but it did contend that the "attempt to terminate benefits to employees provided by the Vacation clauses, Insurance Plan, Pension Plan and Supplemental Unem-

1. The Equitable Life Assurance Society of the United States (Equitable), which issued policies at the request of the Employer, was named as a defendant and invited to participate in the requested arbitration.

ployment Benefit Plan, as incorporated by reference in . . . the collective bargaining agreement, [is] in direct violation of rights of its employees provided under said articles of the collective bargaining agreement." The grievance stated that the Union was willing to waive all preliminary steps and refer the matter to immediate arbitration under Article V, Section 5, of the basic agreement.

The parties were unable to agree upon the matters to be arbitrated. The Union ultimately demanded arbitration of issues arising under the basic agreement, the Insurance Plan, the Pension Plan, and the Supplemental Unemployment Benefit Plan.[2]

The Employer would not agree to arbitrate on these terms and the Union then commenced an action in the district court seeking an injunction compelling arbitration of all matters in dispute. The Employer did not dispute the Union's right to arbitrate its vacation and seniority claims. However, it contended that the Union's claims relating to benefits spelled out in the separate agreements were not arbitrable under the basic agreement.

Equitable moved that it be dismissed upon the ground it was not a party to the collective bargaining agreement.

This cause was submitted to the district court on a stipulation, affidavits, and briefs. The court dismissed the action against Equitable upon the ground that it was not a party to the collective bargaining agreement and the interpretation of its contract was not subject to arbitration.

■ Since Equitable's rights and obligations cannot be determined in an arbitration proceeding under the labor contract, its motion to dismiss was properly sustained. *See* United Steelworkers of America, AFL–CIO et al. v. Mesker Bros. Industries, Inc., 457 F.2d 91 (CA8 1972).

The district court further ordered that the Employer and the Union submit to arbitration those differences which arose under the basic collective bargaining agreement, but that the differences arising under the Insurance Plan, the Pension Plan, and the Supplemental Unemployment Benefit Plan should not be so submitted. The court indicated it so reasoned because it found, "There is nothing in the collective bargaining agreement which indicates that the separate insurance agreements should in any way be subject to the terms of the collective bargaining agreement." It found similarly with respect to the Pension Plan.

"The law compels a party to submit his grievance to arbitration only if he has contracted to do so." Gateway Coal Co. v. United Mine Workers of America, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Here the parties were bound by their 1972 collective bargaining agreement. Among other things the basic agreement provided for adjustment

---

2. The Union's statement of the issues it wished to arbitrate was as follows:
    1. Whether, under the General Pension Plan and the basic agreement, affected employees continue to earn age and continuous service for any or all pension purposes, and, if so, for what period of time?
    2. Whether, under the Group Insurance Plan and the basic agreement, affected employees continue their insurance coverage, and, if so, the extent and duration of such coverage?
    3. Whether, under the Supplemental Unemployment Benefit Plan and the basic agreement, affected employees are eligible for Supplemental Unemployment Benefits?
    4. Whether affected employees are entitled to vacation pay for the current Vacation Pay Year. If so, how should such pay be calculated and to what extent is the Minimum Vacation Pay Guarantee applicable?
    5. Whether the Company violated the basic agreement by purporting to terminate affected employees and by denying such employees the opportunity to exercise seniority rights provided under Article VI of said agreement?

of grievances, which reads in part as follows:

> Should any dispute or difference arise between the Company and the Union or its members employed by the Company as to the meaning, application, or operation of any provisions of this Agreement, or should trouble of any kind arise, there shall be no suspension or slowdown of work, or lockout, but such dispute or difference shall be settled in the following manner[.]

There followed a detailed five-step procedure for the adjustment of differences between the Employer and the Union. The fifth step provided for binding arbitration and it reads in part as follows:

> An Arbitrator to whom any grievance shall be submitted in accordance with the provisions of this Section shall, insofar as shall be necessary to the determination of such grievance, have authority to interpret and apply the provisions of this Agreement, but shall not have authority to alter in any way the terms and conditions of this Agreement. Only questions as to interpretation or application of or compliance with the provisions of this Agreement may be submitted to an Arbitrator.

The Employer urges, as it did below, that the Insurance Plan, the Pension Plan and the Supplemental Unemployment Benefit Plan are separate agreements and are not subject to the arbitration procedure provided for in the basic agreement; that the separate agreement on the Pension Plan provides that dis-

putes thereunder "shall be referred to an impartial umpire to be selected by the Company and the Union"; further, that during the 1969 negotiations the Union unsuccessfully proposed to change the appeals procedure in the Pension Plan to provide that differences be referred to an arbitrator to be selected in the manner provided in the basic agreement; that the Supplemental Unemployment Benefit Plan provides that if a company employee disagrees with a determination thereunder he should discuss the matter with a company representative, and if not resolved file a written request for review on a form provided by the company.

The Union contends that since Articles VIII, IX and X of the basic agreement make specific reference to the three plans,[3] they are to be considered as included in and governed by the basic agreement.

The fundamental dispute between the Employer and the Union in this case involves the Union's contention that the employees whose work was discontinued by the closing were in "lay off" status, rather than "terminated," and accordingly they were entitled to benefits contractually promised to laid-off employees. This involves a resolution of the critical question of whether the Employer's closing of the plant entitled it to terminate the employees and thereby deprive them of benefits which they would enjoy if, as the Union claims, they remained in a lay-off status following the closing.

---

3. The basic agreement refers to the three plans as follows:

**ARTICLE VIII**
**INSURANCE PLAN**

The Company agrees that the Insurance Plan, as amended April 29, 1972, which is covered by a separate Agreement, shall be continued in effect until May 31, 1975.

**ARTICLE IX**
**PENSION PLAN**

The Company agrees that the Pension Plan, as amended April 29, 1972, which is covered by a separate Agreement, shall be continued in effect until May 31, 1975.

**ARTICLE X**
**SUPPLEMENTAL**
**UNEMPLOYMENT BENEFITS**

The Company agrees that the Supplemental Unemployment Benefit Plan, as amended April 29, 1972, which is covered by a separate Agreement, shall be continued in effect until April 30, 1976, subject, however, to any changes that may be negotiated upon the expiration of this Labor Agreement.

A reading of the separate agreements indicates that the answer to this question is to be found in interpreting the basic agreement and is thus subject to arbitration thereunder.

The general Pension Plan provides:

## 5. DETERMINATION OF CONTINUOUS SERVICE

1(b) Continuous service shall be broken by:

(1) Termination (if and when termination occurs pursuant to the Basic Agreement);

■ The other plans likewise require an interpretation of "termination" under the basic plan.[4] Since the critical issue posed by the Union's grievance involving the question of termination or layoff is to be determined by interpretation of provisions of the basic agreement, we are satisfied that the entire grievance should be submitted to arbitration as provided thereunder.

■ In the *Steelworkers Trilogy*,[5] we are taught that there is a presumption of arbitrability for labor disputes:

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

We cannot say with positive assurance that the basic agreement is not susceptible of an interpretation that covers the asserted dispute.

The district court will enter an appropriate order directing the Employer and the Union to proceed with the selection of an arbitrator in accordance with the basic agreement and proceed with arbitration of all matters in dispute, including the dispute itself.

Affirmed in part, reversed and remanded for appropriate action in accordance with this opinion. Costs taxed 75 per cent to General Steel, 25 per cent to United Steelworkers.

GIBSON, Circuit Judge (concurring).

I concur in the result reached by the majority. However, I wish to emphasize what I view as the narrow basis for holding that the disputes relative to the Pension, Insurance and Supplemental Unemployment Benefit Plans are arbitrable in this case. I cannot agree with the Union's contention that the separate plans can be considered as a part of the basic agreement. Nor do I think the decision in this case should rest upon a general presumption of arbitrability of labor disputes.

---

4. Group Insurance Plan reads in part as follows:

Termination of Employment [10.10]
. If your employment is terminated, (when your continuous service is broken in accordance with the provisions of the Labor Agreement) all coverage under the Program will end at the time of such termination, except as noted in the section of this booklet entitled "Life Insurance" paragraph 1.1 and "Maternity and Obstetrical Benefits" paragraph 8.3.
Supplemental Unemployment Benefit Plan reads in part as follows:

8. DEFINITIONS
"Continuous Service": The continuous service of an employee as determined for pension purposes under the Company's non-contributory pension plan.

5. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

I think it is clear from the language employed by the parties in the basic agreement and upon consideration of the provisions of the separate plans that the plans are in fact independent of and cannot be considered a part of the basic agreement. Further, in my view, the provisions of the arbitration clause in the basic agreement that "[o]nly questions as to interpretation or application of or compliance with the provisions of *this* Agreement may be submitted to an Arbitrator" would, in an ordinary dispute as to eligibility for benefits under one of the separate plans, bar resort to the arbitration provisions of the basic agreement. The provisions within the separate plans would govern resolution of these types of disputes.

However, the dispute in the present case is one that arises under the basic agreement and not under the separate plans. Its resolution depends upon the affected employees' status as "layed-off" or "terminated", a question that can only be answered by interpretation of the basic agreement. Each of the separate plans conditions eligibility upon an employee's continuous service, and each plan provides that the determination of continuous service is to be in accordance with the provisions of the basic agreement. The dispute here relative to the separate plans concerns only how this continuous service is to be calculated. Since such calculation can only be made with reference to the provisions of the basic agreement, the dispute is one arising under the basic agreement that the company has agreed to arbitrate.

The employees' rights under any of the separate plans may be easily resolved once their status as "terminated" or "layed-off" is determined. Directing arbitration on all questions should conserve the parties' energies, reduce costs, and permit a speedy determination of rights, benefits, and liabilities in this industrial dispute.