**FARMLAND DAIRIES, INC., Plaintiff,**

**v.**

**MILK DRIVERS & DAIRY EMPLOYEES UNION LOCAL 680, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO; Len Meyers, individually and as President of Local 680, Ed Tracy, individually and as Secretary-Treasurer of Local 680; John Doe and Mary Roe, said names being fictitious, their true names being unknown to plaintiff, Defendants.**

**Civ. No. 95–1735 (WHW).**

United States District Court,
D. New Jersey.

Feb. 11, 1997.

Jed L. Marcus, Patricia L. Hardaway, Grotta, Glassman & Hoffman, Roseland, NJ, for Plaintiff.

Mark C. Rushfield, Guazzo, Perelson, Rushfield & Guazzo, Maplewood, NJ, for Defendants.

## AMENDED OPINION

WALLS, District Judge.

This matter arises on the motion of defendants Milk Drivers & Dairy Employees Union Local 680, International Brotherhood of Teamsters, AFL–CIO ("Local 680"); Len Meyers, individually and as President of Local 680 ("Meyers"); and Ed Tracy, individually and as Secretary–Treasurer of Local 680 ("Tracy") (collectively, "the defendants") to dismiss the complaint of the plaintiff, Farmland Dairies ("Farmland") and direct arbitration of the dispute, or in the alternative, to stay the claims pending arbitration. Farmland cross-moves for leave to amend its complaint to add new claims. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court will decide this matter on the basis of the parties' written submissions.

For the following reasons, the Court grants the defendants' motion and denies the plaintiff's cross-motion.

### I. Background and Procedural History

Farmland operated a "blow-mold" facility to manufacture plastic bottles for packaging its dairy products. This facility employed workers represented by Local 680. In early 1995, Farmland decided to discontinue the blow-mold operation and instead purchase bottles from Bercon Industries ("Bercon"), a bottle manufacturer. Bercon agreed to lease space from the plaintiff in a building adjacent to Farmland's plant and planned to supply bottles to other businesses, including Tuscan Dairy ("Tuscan").

After Farmland announced the discontinuation of the blow-mold facility, the defendant labor union and its officers sought to pressure Farmland, allegedly through threats to shut down its business, to continue its blow-mold operation, reverse its agreement with Bercon, refrain from doing business with Tuscan or convince Bercon to recognize Lo-

cal 680. On April 10, 1995, the defendants organized a picket of Farmland using Tuscan and Clinton Milk Company ("Clinton") employees, who were also represented by Local 680. The picketing at times turned violent. Farmland alleges that the union, through its officers Meyers and Tracy, encouraged Farmland's employees to engage in a work stoppage by assuring them that they could not be disciplined for refusing to cross the picket lines.

On April 12, 1995, Farmland filed a complaint pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.A. § 185 (West 1978), for the defendants' alleged violation of their collective bargaining agreement with Farmland. Specifically, Farmland alleged that the defendants caused or encouraged picketing and/or work stoppages at Farmland's facilities to protest its termination of the blow-mold operation. Such actions, charged Farmland, violated the no-strike/no-lockout and grievance and arbitration provisions in the collective bargaining agreement entered into by Local 680 and Farmland.

Article I, Section 1.25 of the collective bargaining agreement provides, in pertinent part:

(a) Any and all grievances, disputes and controversies arising under or in connection with the terms or provisions of this agreement, or in connection with or relating to the application or interpretation of any of the terms of provisions hereof, or in respect to anything not herein expressly provided but germane to the subject matter of this Agreement and affecting an employee, an Employer, or the Union, which the representatives of the Union and the Employer have been unable to adjust, shall be submitted for arbitration, upon the request of either party to this Agreement to an Arbitrator....

Certification of Mark C. Rushfield at ¶ 5.

Article I, Section 1.26 provides

(a) No strikes, lockouts, walkouts or slowdowns shall be ordered, sanctioned or enforced by either party hereto against the other during the life of this Agreement.

(b) The Union shall not call, sanction or enforce any sympathetic strike of its members, and the Employer shall not aid other companies in any fight that may be waged against the Union.

Id. at ¶ 6.

On April 12, 1995, this Court executed a Order to Show Cause which specifically stated, "Both parties are obligated to arbitrate any and all disputes arising out of the collective bargaining agreement." The order further provided that "all disputes between Defendant Local 680 and Plaintiff be resolved through the parties' grievance procedure, up to and including final and binding arbitration" pursuant to the collective bargaining agreement.

All parties consented to the "form and entry" of an order by the Court dated April 21, 1995 for a preliminary injunction. In pertinent part, this order required that:

... Defendants and all persons associated with or acting in concert or combination with them, shall:

1. Advise Farmland employees represented by Defendants to remain at work, and to cease the unlawful work stoppages which Defendants have threatened and encouraged, and may engage in, condone, or encourage in the future over the termination of its blow-mold operation and/or its contracting of such functions with Bercon Packaging and/or its purchase of plastic bottles from Bercon Packaging and/or the matters described in Exhibit C to the April 12, 1996 Affidavit of Frank Polizzi filed in the within matter.

2. Advise Farmland employees represented by Defendants to cease and refrain from engaging in any of the conduct prohibited above.

Following Farmland's request to depose Tracy and Meyers with regard to this litigation, the defendants moved to dismiss the complaint or in the alternative to stay any claims pending arbitration of the dispute. Farmland responds with its contentions that there are no more issues to arbitrate, that the defendants' signature on the Consent Order constituted a stipulation of their liabili-

**1194**

ty, and therefore, the Court has the power to ascertain damages.

Farmland now moves for leave to amend its complaint to add claims against the defendants under § 303 of the LMRA, 29 U.S.C.A. § 187 (West 1978), the Civil Rights Acts, 42 U.S.C.A. § 1985 (West 1981), and federal common law, as well as a state law claim for tortious interference with contractual relations.

## II. *Analysis*

### A. *Whether the Complaint Should Be Dismissed or the Action Stayed Pending Arbitration.*

Farmland brought suit against the labor union and its officials pursuant to § 301 of the LMRA.[1] The plaintiff now claims that the defendants have been ordered by this Court to arbitrate the bottling grievance and that they, the defendants, have effectively conceded liability under the no-strike clause of the collective bargaining agreement by signing the consent order. Consequently, argues Farmland, the only issue left to consider is that of damages. And the issue of damages being one for this Court to decide, there is nothing to arbitrate.

■ As a preliminary matter, it is beyond argument that federal law leans strongly in favor of arbitration of labor relations disputes where the parties have so provided. *See, e.g., United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960); *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). It is for the Court to decide whether a party is bound by an arbitration clause in a collective bargaining agreement. *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1418–19; *Laborers' Int'l Union v. Foster Wheeler Corp.,* 868 F.2d 573, 576 (3d Cir.1989).

Federal courts have long recognized the well-established "presumption of arbitrability which should be dispelled only when the agreement explicitly exempts certain conduct from arbitration or when the terms of the agreement, read as a whole, clearly envision non-arbitrability." *Controlled Sanitation Corp. v. District 128,* 524 F.2d 1324, 1328 (3d Cir.1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976); *see also Warrior & Gulf,* 363 U.S. at 583, 80 S.Ct. at 1353 (stating that "[d]oubts should be resolved in favor of [arbitration].") The Third Circuit has noted, "It is not arbitration *per se* that federal policy favors, but rather final adjustment of differences by a means selected by the parties." *United Steelworkers of America v. Lukens Steel Co.,* 969 F.2d 1468, 1474 (3d Cir.1992) (citation omitted).

Article I of the collective bargaining agreement between the parties contains a very broad arbitration clause which covers "any and all grievances, disputes, and controversies arising under or in connection to the terms or provisions of [the] agreement." It also sweeps within its scope "anything not herein expressly provided but germane to the subject matter of [the] Agreement and affecting an employee, an employer, or the Union." The Court cannot envision a broader range of an agreement to arbitrate.

It is uncontroverted that this agreement is valid. Farmland, however, sets forth several arguments in opposition to the defendants' request to have all issues submitted to an arbitrator pursuant to the Consent Order or have the complaint dismissed.

■ First, the defendants consented to the entry of the Consent Order for the Preliminary Injunction, and in particular the provision stating that they would advise Farmland employees to "cease the unlawful work stoppages which Defendants have threatened and encouraged." This statement, argues Farmland, is an admission of fault by the defendants, thereby eliminating any need for arbitration because now the Court can decide the measure of damages.

---

1. Section 301 provides, in pertinent part:
   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
   29 U.S.C.A. § 185.

The Court is not persuaded that this statement, within the context of an order or agreement to end a work stoppage and submit issues to arbitration, rises to the level of an admission of liability. The consent order reflected the agreement of the parties to cease the activities which Farmland alleged were causing it harm. However, it is reasonable to assume that an admission of liability would not be made in such an unspecified and imprecise manner. Thus, the Court refuses to find a waiver of the "right to litigate the issues raised, a right guaranteed . . . by the Due Process Clause," from so little evidence of intent. *United States v. Armour,* 402 U.S. 673, 682, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d 256 (1971). Indeed, there is evidence that Farmland itself did not view the statement as an admission of liability, for it sought to depose defendants Tracy and Meyers. The testimony of the two union officers is germane to litigation of liability, not damages. Accordingly, it appears that Farmland itself has not always perceived the order to have the preclusive effect it strenuously argues for now.

■ The Court does not find that the Consent Order contained an admission by the defendants that they violated the no-strike clause. Because the arbitration clause encompasses this dispute, the Court orders that the issue be submitted to arbitration pursuant to the contract. Second, even if the Court were to find a stipulation of liability on the part of the defendants, it does not agree with Farmland's assertion that the "underlying dispute in this case (the performance of certain work by a third party contractor), does not deal with damages caused by the no-strike clause. Thus, the damage issue would not be before an arbitrator."

The Court specifically stated in its Order to Show Cause that all issues arising out of the collective bargaining agreement were to be submitted to arbitration. The clause in the agreement clearly has a broad sweep, drawing in "any and all grievances, disputes and controversies arising under or in connection with the terms or provisions of this agreement" as well as "anything not herein expressly provided but germane to the subject matter of this Agreement and affecting an employee, an Employer, or the Union." In the face of such language, which illustrates the range of issues the parties intended to arbitrate, the Court cannot find that the issue of damages for breach of the no-strike clause could be exempted. Farmland cannot pick and choose the issues it seeks to place before the arbitrator when the agreement of the parties leaves no doubt that all disputes, including those arising from the grievance and arbitration clause or no-strike clause, are arbitrable.

Moreover, the issue of damages would be still be properly before the arbitrator even if liability were not contested. In view of the broad agreement of the parties, arbitration is the correct forum for the determination of the damages. *See Controlled Sanitation,* 524 F.2d at 1331. The Supreme Court has recognized that arbitration is an appropriate forum for the determination of damages.

> If the union did strike in violation of the contract, the company is entitled to its damages; by staying this action, pending arbitration, we have no intention of depriving it of those damages. We simply remit the company to the forum it agreed to use for processing its strike damage claims. That forum, it is true, may be very different from a courtroom, but we are not persuaded that the remedy there will be inadequate.

*Drake Bakeries v. Bakery Workers,* 370 U.S. 254, 266, 82 S.Ct. 1346, 1353, 8 L.Ed.2d 474 (1962).

■ Third, Farmland argues that the defendants are estopped from claiming that the action should be stayed pending arbitration. This argument is based upon the defendants' earlier assertion, as a defense to the complaint, that the underlying dispute was not subject to arbitration.

■ Judicial estoppel is "an equitable doctrine invoked by the court in its discretion." *McNemar v. The Disney Store, Inc.,* 91 F.3d 610, 617 (3d Cir.1996) (citations omitted). The doctrine is intended to preserve the integrity of the judicial system by preventing parties from playing "fast and loose" with the courts in assuming inconsistent positions. *Id.* Judicial estoppel is factually driv-

en—each case must be decided upon its own facts and circumstances. *Id.* A court considering applying the doctrine must ask two questions: (1) whether the party's present position is inconsistent with a position formerly asserted; and (2) if so, whether the party asserted either or both of the inconsistent positions in bad faith (that is, with intent to play fast and loose with the courts). *Id.* (citing *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir.1996)).

Local 680's present position is inconsistent with the position it took previously in this Court when it fought against arbitrability of the bottling dispute. However, the Court declines to apply the doctrine of judicial estoppel to preclude Local 680 from arguing for arbitration now. The Court cannot find bad faith from these facts and notes that it is not unusual for parties at an early stage in litigation to assert conflicting defenses. Moreover, the federal policy favoring arbitrability is strong. Courts have found it controlling even in circumstances which may otherwise seem unfair. *See Controlled Sanitation*, 524 F.2d at 1328 (holding that union was not judicially estopped from arguing in favor of arbitration even when for three years it denied the existence of a contract requiring arbitration of an alleged violation of the no-strike clause).

Furthermore, the defendants repeated in the Consent Order that any issues arising out of the collective bargaining agreement should be submitted to arbitration. This Court has determined that the arbitration clause should be given the broad scope intended by the parties. Considering the facts and circumstances of this case, the Court cannot find that the defendants should be judicially estopped from claiming that the disputes should go to arbitration.

■ Fourth, Farmland correctly observes that arbitration is a matter of contract. *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1352–53. Relying upon the defendants' affir-

mative defense to Farmland's complaint,[2] Farmland characterizes the defendants as "third party strangers to its collective bargaining agreement" and thus argues that it is not required to arbitrate with them. *See Steelworkers v. General Steel Indus., Inc.*, 499 F.2d 215, 217 (8th Cir.1974).

Farmland's reliance on *Steelworkers* is misplaced. Whatever the defendants may have pleaded in their answer, the Court finds that the agreement is between Local 680 and Farmland. That employees of Tuscan or Clinton participated in the work stoppage or strike does not remove the obligation of Farmland and Local 680 to arbitrate the alleged violation of the no-strike clause. Farmland is required to arbitrate with the defendant union because Local 680 represents the employees of those other companies. There are no "third parties" to the collective bargaining agreement involved in this case.

■ Lastly, the Court rejects Farmland's assertion that it is not bound to arbitrate with defendants Tracy and Meyers in their official capacity. Courts, including the Third Circuit, have applied agency principles to require that claims against officers or employees of one of the contracting parties who were not signatories to the arbitration contract be submitted to arbitration. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121–22 (3d Cir.1993); *see also Bleumer v. Parkway Ins. Co.*, 277 N.J.Super. 378, 411, 649 A.2d 913 (Law Div. 1994) (listing decisions in which claims against non-signatories were required to be submitted to arbitration).

In *Pritzker*, the court held that pension plan trustees were required to arbitrate their statutory ERISA claims with the consultant and sister corporation of the defendant broker firm even though they had never signed the arbitration agreement. *Pritzker*, 7 F.3d at 1122. There, as here, the agreement contained language which unmistakably evidenced the parties' intent

2. The defendant officers and labor union, noting that Farmland had also named "John Doe" defendants who were not Farmland employees but allegedly acted in concert with the defendants, pleaded as a defense that "[t]he underlying dispute in this case was one between the employees of another employer and plaintiff and, as such, was and is not subject to the Agreement's grievance and arbitration procedure." Answer at ¶ 11.

to arbitrate all controversies which might arise between them and encompassed the claims at issue. *Id.* at 1114. The *Pritzker* court stated, "Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Id.* at 1121. *See also Arnold v. The Arnold Corp.*, 920 F.2d 1269, 1281–82 (6th Cir.1990) (holding that plaintiff's federal securities law and RICO claims against non-signatory officers of the defendant and an independent broker dealer were arbitrable); *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1188 (9th Cir.1986) (holding that a broker's employees were entitled to invoke clause in the employer's brokerage agreement requiring arbitration of fraud and federal securities law violations). The *Arnold* opinion, which was approvingly cited by the Third Circuit in *Pritzker,* observed that if the rule were otherwise, a party could easily "avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties as [defendants] in his complaint or signatory parties in their individual capacities only [and] the effect of the rule requiring arbitration would, in effect, be nullified." *Id.* at 1281 (quoting *Arnold v. The Arnold Corp.*, 668 F.Supp. 625, 629 (N.D.Oh.1987)).[3]

There can be no doubt that Tracy and Meyers, respectively the president and secretary-treasurer of Local 680, are agents of the union. They have the power and authority to act on behalf of Local 680. Therefore, Farmland is bound to arbitrate with them.

The Court orders that the disputes over the alleged violations of the grievance and arbitration and no-strike clauses, and calculation of damages, if any, be submitted to arbitration under the terms of the collective bargaining agreement. Accordingly, Farmland's claim under section 301 is dismissed without prejudice. *See Eberle Tanning Co. v. Food and Commercial Workers,* 682 F.2d 430, 432 (3d Cir.1982).

B. *Whether Farmland Should Be Permitted to Amend its Complaint to Add Claims Against the Individual Defendants.*

A party wishing to amend a pleading must seek leave of the court to do so. Fed. R.Civ.P. 15(a). Leave to amend a pleading "shall freely be granted when justice so requires." Fed.R.Civ.P. 15(a). This reflects a view that the moving party ought to be afforded an opportunity to test its claim on the merits, if the underlying facts and circumstances may be a proper subject for relief. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Denial of a motion to amend is proper only when there is a finding of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.*

Farmland argues that Tracy's and Meyers's activities constituted an illegal interference with Farmland's business contracts with third parties in violation of the Civil Rights Act, 42 U.S.C. § 1985. It also charges violations of federal common law and state law prohibiting tortious interference with contracts. Lastly, it alleges that the defendants violated § 8(b)(4) of the LMRA, 29 U.S.C. § 158(b)(4), by engaging in activities that disrupted its business and seeks damages pursuant to § 303 of the LMRA, 29 U.S.C. § 187.

---

3. Nor does the Third Circuit's subsequent decision in *Kaplan v. First Options of Chicago,* 19 F.3d 1503 (3d Cir.1994), *aff'd,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), require a different result. There, the court held that the defendant principal and officer of a company would not be bound by an arbitration clause he did not sign because the evidence as a whole overwhelmingly indicated that he did not intend or consent to assume any individual liability for his company's obligations. *Id.* at 1514. The *Kaplan* court distinguished its decision from that in *Pritzker* by noting that *Pritzker* extended the arbitration agreement to the employees based on agency principles. *Id.* at 1515. In *Kaplan,* the plaintiffs never advanced an agency theory and the issue was decided as a matter of contract law. *Id.* at 1514–15. Moreover, in *Pritzker,* the interests of the non-signatory and signatory parties were co-extensive; in *Kaplan,* they were not. *Id.* at 1515.

Defendants do not oppose Farmland's request for leave to amend by alleging undue delay, bad faith, or dilatory motive on Farmland's part. Nor do they argue that permitting Farmland to amend will prejudice them in any way.

However, the Court determines that Farmland's federal claims are futile and could not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Accordingly, the Court, *sua sponte,* addresses these claims as a motion to dismiss and denies Farmland's request to add claims under § 303 as well as claims under federal common law and § 1985 against defendants Meyers and Tracy. Because no federal claims remain, the Court lacks jurisdiction to hear Farmland's proposed state law claim.

1. *Proposed claims under 42 U.S.C. § 1985 and federal common law.*

■ Farmland asserts that "as a matter of federal common law, a union official or member may be individually liable for wanton and willful violations of section 8(b)(4) [of the LMRA]." *Kerry Coal Co. v. United Mine Workers,* 637 F.2d 957, 965 (1981), *cert. denied,* 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981). It also relies upon *Kerry Coal* for the proposition that a § 1985 claim for individual liability against union officers may be maintained when those persons engage in illegal secondary boycott activity against an employer with whom the employees they represent have no contract.

Farmland's interpretation of Third Circuit law is incorrect. It is established that when a union is liable for damages for an injury inflicted by it, its officers and members will not be liable for these damages. 29 U.S.C.A. § 185; *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 249, 82 S.Ct. 1318, 1325, 8 L.Ed.2d 462 (1962).[4] In *Atkinson,* the Supreme Court stated that "this policy cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract or tort, or both, in a separate count or in a separate action for damages for violation of a collective bargaining contract for which damages the union itself is liable." *Id.*

In *Kerry Coal,* the Third Circuit recognized, pursuant to *Atkinson,* that the individual union officers were immune from suit for money damages under sections 301 and 303. *Kerry Coal,* 637 F.2d at 965. However, other bases for jurisdiction against those defendants existed. Specifically, the court held that the plaintiffs could pursue claims against the individual defendants under 42 U.S.C. § 1985 as well as under the "federal common law" for "wanton and willful" violations of § 8(b)(4). *Id.*

That same year, the Third Circuit revisited this issue in *Wilkes–Barre Publishing Co. v. Newspaper Guild of Wilkes–Barre,* 647 F.2d 372, 377 (1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982), and limited the holding of *Kerry Coal* to permit suits for money damages against individual defendants only when the defendants do not have a contractual relationship with the plaintiffs. *Id.* Therefore, "where the individual member liability sought to be imposed grows out of activities on behalf of a union with which the plaintiff has a bargaining relationship ... the policies which the *Atkinson* Court identified in section 301(b) apply." *Id.* The *Wilkes–Barre* court concluded that § 301(b) must be held to preempt the state law claim for money damages for tortious interference with third party contracts and to preclude any similar federal law claim as well. *Id.* at 377–78.

The plaintiff has made a Herculean but ultimately unsuccessful effort to bring the facts of this case within the limited purview of *Kerry Coal.* Although non-Farmland employees participated in the picketing, those employees as well as Farmland's are all represented by Local 680. It is uncontroverted

---

4. Section 301(b) of the LMRA states in pertinent part, "Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C.A. § 185. The *Atkinson* Court, in holding that union officers would be immune from suits for money damages, sought not to "undercut the Act and defeat its policy by read[ing] § 301 narrowly." *Atkinson,* 370 U.S. at 249, 82 S.Ct. at 1325.

that Farmland has a collective bargaining agreement with Local 680.

*Wilkes–Barre* extends *Atkinson* immunity to the individual defendants, Meyers and Tracy, and precludes Farmland from asserting claims for money damages, whether under § 1985 or under federal common law for violations of § 8(b)(4). Thus, the Court finds as a matter of law that these proposed added claims fail to state a claim upon which relief can be granted. Accordingly, Farmland's motion for leave to amend is denied as to those claims.

### 2. *Proposed claim under § 303 of the LMRA.*

■■■■ When determining the arbitrability of a statutory claim, a court must look at the following:

(1) Did the parties agree to arbitrate?

(2) What is the scope of any such agreement?

(3) If federal statutory claims are asserted, did Congress intend them to be non-arbitrable by precluding a waiver of a judicial forum?

*Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991); *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987). It is clear that the parties here intended to arbitrate and that the scope of that agreement is broad. Therefore, in order for a statutory claim to override the strong federal policy favoring arbitration, the party opposing arbitration must show that Congress reserved the federal forum to vindicate rights under the statute. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985) ("Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."); *Genesco,* 815 F.2d at 844. The burden falls upon the party opposing arbitration to show that Congress intended to preclude a waiver of judicial remedies for statutory rights or that such a waiver inherently conflicts with the underlying purposes of the statute. *Shearson/American Express, Inc. v. McMahon,*

482 U.S. 220, 226–27, 107 S.Ct. 2332, 2337–38, 96 L.Ed.2d 185 (1987).

■■■■ There is no *per se* presumption against arbitration of statutory claims. *See Mitsubishi,* 473 U.S. at 625, 105 S.Ct. at 3353. As a general proposition, the Supreme Court has not been reluctant to find that statutory claims are arbitrable. *See Gilmer,* 500 U.S. at 23, 111 S.Ct. at 1650–51 (holding that claims arising under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. § 621 *et seq.,* are arbitrable); *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 480, 483, 109 S.Ct. 1917, 1919–20, 1921, 104 L.Ed.2d 526 (1989) (holding that securities fraud claims arising under § 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 771(2), are arbitrable); *McMahon,* 482 U.S. at 238, 242, 107 S.Ct. at 2343–44, 2345–46 (ruling that claims of securities fraud arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and claims arising under civil provisions of the Racketeer Influenced and Corrupt Organizations Act (civil RICO), 18 U.S.C.A. § 1961 *et seq.,* are arbitrable); *Mitsubishi,* 473 U.S. at 629, 105 S.Ct. at 3355 (ruling that antitrust claims arising under the Sherman Act, 15 U.S.C.A. § 1 *et seq.,* may be arbitrable). *See also Genesco,* 815 F.2d at 851 (holding that civil RICO claims arising in the international context are arbitrable). The Supreme Court has noted that a party who agrees to arbitrate a statutory claim "does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354.

Section 8(b)(4) of the LMRA prohibits, among other things, a union or its agents from "engag[ing] in, or ... induc[ing] or encourag[ing] any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or refusal ... to perform any services." 29 U.S.C.A. § 158. Section 303 of the LMRA establishes jurisdiction of the district courts over suits for damages suffered because of violations of § 8(b)(4).

Some courts have held that unlike claims arising under § 301 of the LMRA, for § 303

claims the presumption of arbitrability is reversed. *E.g., Waco Scaffolding Co. v. Local 845,* 585 F.Supp. 102, 107 (E.D.Pa.1984). Thus, in order to submit a claim for damages under § 303, the arbitration clause must clearly and explicitly state that an arbitrator is to hear and determine the claims in tort. *Bechtel Corp. v. Local 215,* 405 F.Supp. 370, 376–77 (M.D.Pa.1975), *aff'd in part,* 544 F.2d 1207 (3d Cir.1976); *Old Dutch Farms, Inc. v. Milk Drivers Local Union No. 584,* 359 F.2d 598, 603 (2d Cir.1966), *cert. denied,* 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966). The underlying rationale for these decisions is that "public tort actions arising from alleged violations of § 8(b)(4) of LMRA are appropriate to the expertise and power of the courts." *Waco,* 585 F.Supp. at 108 (citing *Old Dutch Farms,* 359 F.2d at 604).

This Court is not impressed by such an explanation. And none of these cases is directly binding upon it. In *Bechtel,* the plaintiff company brought claims under § 301 and § 303 against the defendant union for a work stoppage related to a jurisdictional dispute. *Bechtel,* 405 F.Supp. at 372–73. The basis of the § 303 claim was an alleged violation of § 8(b)(4)(d), which prohibits a union from engaging in a jurisdictional strike under certain circumstances.

*Bechtel,* however, is distinguishable. There, the underlying trade jurisdiction dispute had been expressly excluded from arbitration, demonstrating the parties' intent to submit such disputes to the National Joint Board for the Settlement of Jurisdictional Disputes in the Building and Construction Industry. *Bechtel,* 544 F.2d at 1211, 1214. Unlike this case, *Bechtel* did not have nor address an arbitration clause so expansive in its breadth as to reflect the parties' intent to resolve any and all disputes arising from the subject matter of the agreement between them through arbitration.

Moreover, there is a strong argument that any value these cases may have as precedent has been eroded by the trend of gradual acceptance, beginning at the Supreme Court, of arbitration as a forum for statutory claims. Our highest Court observed in *Mitsubishi,* "[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit enforcement of the [Arbitration] Act in controversies based on statutes." *Mitsubishi,* 473 U.S. at 626–27, 105 S.Ct. at 3354. The Third Circuit recognized as much in *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110 (1993), when, in view of the Supreme Court's analysis of the arbitrability of statutory torts in *McMahon* and *Rodriguez,* it overruled its own precedent to conclude that statutory ERISA claims may be submitted to arbitration. *Id.* at 1112 (overruling in relevant part *Barrowclough v. Kidder, Peabody & Co.,* 752 F.2d 923 (3d Cir.1985)). The court echoed the Supreme Court's reasoning in a similar situation, "So long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Pritzker,* 7 F.3d at 1119 (quoting *Gilmer,* 500 U.S. at 28, 111 S.Ct. at 1653).

The Court notes that the above-cited cases were decided under the Federal Arbitration Act (FAA), 9 U.S.C.A. § 1 *et seq.* (West 1990) rather than the case law more directly applicable to arbitration of labor disputes.[5] The FAA states that

> [a] written provision in a ... contract involving commerce to settle by arbitrating a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof ... shall be valid, irrevocable, and enforceable.

9 U.S.C.A. § 2. The Supreme Court has stated that § 2 is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765

---

5. The principles announced in the landmark series of cases popularly known as the *Steelworkers' Trilogy* generally govern arbitrability in the area of labor relations. The *Trilogy* consists of *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

(1983). The FAA directs federal courts to order parties to proceed to arbitration on issues as to which an arbitration agreement was signed. 9 U.S.C.A. § 4; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985); *Genesco,* 815 F.2d at 844.

Section 1 of the FAA explicitly excludes from its scope "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C.A. § 1.[6] Since the FAA's enactment, the circuits have split over whether this exception applies to all employment contracts, or only those contracts involving a class of workers actually engaged in interstate commerce. *Compare Rojas v. TK Communications, Inc.,* 87 F.3d 745, 748 (5th Cir.1996) (adopting narrow reading of § 1's exclusionary clause); *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 600–01 (6th Cir.1995) (same); *Miller Brewing Co. v. Brewery Workers Local Union,* 739 F.2d 1159, 1162 (7th Cir.1984) (same), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985); *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1069 (2d Cir.1972) (same); *Dickstein v. duPont,* 443 F.2d 783, 785 (1st Cir.1971) (same); *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers,* 207 F.2d 450, 453–54 (3d Cir.1953) (same) *with Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 310–11 (6th Cir.1991) (in dicta, adopting broad reading of § 1's exclusionary

clause); *United Electrical, Radio & Mechanical Workers v. Miller Metal Prods.,* 215 F.2d 221, 224 (4th Cir.1954) (same). *See also Gilmer,* 500 U.S. at 36, 111 S.Ct. at 1657 (Stevens, J., dissenting) ("In my opinion, arbitration clauses contained in employment agreements are specifically exempt from coverage of the FAA.")

In *Tenney,* the Third Circuit concluded that the exclusionary clause applied only to contracts of workers in the transportation industries. It examined the language of § 1 in light of the principle of *ejusdem generis* and concluded that the phrase "any other class of workers engaged in foreign or interstate commerce," following on the heels of "seamen" or "railroad employees," evidenced Congress's intent to exclude only the class of workers involved in the "movement of interstate or foreign commerce" rather than the production of goods for interstate commerce. *Tenney,* 207 F.2d at 452. It also analyzed the language of other statutes enacted at the time of the FAA and observed that Congress was capable, when it so desired, of "us[ing] precise language in this field [of commerce] to carry out its intentions." *Id.* at 453.[7]

Two recent Third Circuit decisions have cast doubt on the continued vitality of *Tenney. See Service Employees Int'l Union v. Office Center Serv., Inc.,* 670 F.2d 404, 406 n. 6 (3d Cir.1982) (noting, in dicta, that it is more likely that the broad principles of arbi-

---

**6.** Section 1, in pertinent part, provides:
[C]ommerce, as herein defined, means commerce among the several States or with foreign nations, or in any territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.
9 U.S.C.A. § 1.

**7.** For instance, at the time the FAA was enacted, the Supreme Court had construed language in the Federal Employers' Liability Act of 1908, 45 U.S.C.A. § 51 *et seq.* (West 1986), applying that act to a railroad employee injured "while he [was] employed by such carrier (by railroad) in such (interstate or foreign) commerce" to include only employees engaged in interstate trans-

portation or in work so closely related to it as to be practically a part of it. *Tenney,* 207 F.2d at 453 (citing *Shanks v. De., L. & W. R. Co.,* 239 U.S. 556, 36 S.Ct. 188, 60 L.Ed. 436 (1916)). The *Tenney* court observed, "In incorporating almost exactly the same phraseology into the Arbitration Act of 1925 its draftsmen and the Congress which enacted it must have had in mind this current construction of the language which they used." *Id.* Furthermore, "when Congress later proceeded to exercise power under the commerce clause [after its scope had been expanded] ... it continued to use the phrase 'engaged in commerce' in the narrower sense while using other and more precise language to include activities merely affecting commerce. Thus Congress made the Fair Labor Standards Act [of 1938, 29 U.S.C.A. § 206 (West Supp.1996) ] applicable not only to employees 'engaged in commerce' but also to those engaged 'in the production of goods for commerce.' " *Id.*

tral primacy and judicial deference to labor arbitration announced in the *Steelworkers* trilogy of cases, rather than the FAA, govern collective bargaining agreements); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110, 1120 (3d Cir.1993) (observing, without citing to any authority, that "contracts of employment are explicitly exempted from the FAA" and "the FAA by its own terms does not apply to employment contracts.") However, *Tenney* has not been overruled in this Circuit. Its view of § 1's limited scope is shared by nearly every circuit to have considered the issue and its holding and reasoning have been cited approvingly by other courts. *See Asplundh,* 71 F.3d at 597; *Durkin v. Cigna Property and Casualty Corp.,* 942 F.Supp. 481, 485 (D.Kan. 1996); *Hickman v. PaineWebber Inc.,* 1996 WL 700099 * 4 (E.D.Tex.1996); *Crawford v. West Jersey Health Sys.,* 847 F.Supp. 1232, 1242 (D.N.J.1994).

Moreover, *Tenney's* reasoning is sound. In *DiCrisci v. Lyndon Guaranty Bank of New York,* 807 F.Supp. 947 (W.D.N.Y.1992), the court noted that Congress's reference in § 1 to "workers engaged in foreign or interstate commerce" would be "surplusage if it were simply coextensive with Congress's powers under the commerce clause." *Id.* at 953. Thus, "if Congress had wanted to exclude all employment contracts from the Act, it could simply have said 'employment contracts' and left it at that." *Id.* The language of § 1, which refers to "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," suggests that Congress intended to refer only to workers engaged in commerce in the transportation industries. *Id.; accord Crawford,* 847 F.Supp. at 1242.

■ The weight of authority provides ample support for the proposition that the exclusionary clause in § 1 is limited to contracts of workers in the transportation indus-

tries. This Court sees no reason to depart from the *Tenney* decision. Here, the union is involved in the production of goods for interstate commerce. Therefore, § 1 has no application to this case. The FAA is applicable and the standards set out by the Supreme Court in *Mitsubishi, Gilmer, McMahon, Rodriguez,* and *Pritzker* govern here as well.

Accordingly, it is difficult to perceive why claims arising under § 303 of the LMRA should be any less amenable to adjudication in an arbitral forum than claims arising under § 301 or the claims arising under any of the other above-named statutes. Farmland has not met its burden of demonstrating that Congress intended that § 303 claims should be non-arbitrable. Indeed, the plaintiff has not referred the Court to any policy or evidence of congressional intent that would preclude arbitration of these claims. Nor does the Court's review of the legislative history of § 303 reveal any evidence of intent to remove these claims from arbitration if the parties have indeed executed an arbitration agreement, the scope of which encompasses such claims.[8] While § 303 seeks to provide a judicial remedy for violations of § 8(b)(4), there is no indication that the remedy was meant to be exclusive if the parties have agreed otherwise. Therefore, the Court cannot hold that Congress exhibited an intent to make § 303 claims non-arbitrable.[9]

■ Certainly, the factual basis of Farmland's claim for damages under § 303 is found in the subject matter of its collective bargaining agreement with the defendants. Farmland's claims under §§ 301 and 303 are all from the same series of underlying events—the alleged violation of the grievance and arbitration and no-strike clauses of the agreement. The Court notes that "whether a particular claim is arbitrable depends not upon the characterization of the claim, but

---

8. The legislative history indicates that there was some discussion of arbitration. Language in the Senate amendment to the LMRA "indicat[ing] that the parties were under a duty to submit grievance disputes to arbitration" was omitted from the Conference Agreement. Committee of Conference, Labor–Management Relations Act, 1947, H.R.Rep. No. 510, 80th Cong., 1st Sess.

(1947), *reprinted in* 1947 U.S.C.C.A.N. 1135, 1169.

9. Nor does the elimination of the jurisdictional amount in controversy requirement in § 303 signal Congressional intent to preclude arbitration of claims under that section of the LMRA. *See Pritzker,* 7 F.3d at 1119.

upon the relationship of the claim to the subject matter of the arbitration clause." *In re Oil Spill by Amoco Cadiz*, 659 F.2d 789, 794 (7th Cir.1981); *Genesco*, 815 F.2d at 846. The Court agrees with the Seventh Circuit's reasoning that "were the rule otherwise, a party could frustrate any agreement to arbitrate simply by the manner in which it frames its claims." *Amoco Cadiz*, 659 F.2d at 794; *Mutual Benefit Life Ins. Co. v. Zimmerman*, 783 F.Supp. 853 (D.N.J.), *aff'd*, 970 F.2d 899 (1992). Section 303 is tort-based rather than contract-based like § 301, but this distinction should not remove claims arising under it from arbitration when the parties have executed a sweeping agreement to submit disputes to that alternative forum. "Broad language of this nature covers contract-generated or contract-related disputes between the parties however labeled; it is immaterial whether claims are in contract or in tort." *Maldonado v. PPG Indus., Inc.*, 514 F.2d 614, 616 (1st Cir.1975).

Our Third Circuit implicitly recognized the same concept in *Bechtel*. In that case, the court observed that the damages sought by the plaintiff for an alleged work stoppage, whether under a theory of contract or tort, were the same. *Bechtel*, 544 F.2d at 1215. Thus, the success of the plaintiff's claim under § 301 would obviate its claim under § 303 because the law prevents double recovery. *Id.*

Here, Farmland alleges in its proposed § 303 claim that the defendants

> incited and participated in the unlawful boycott of Plaintiff's business by Tuscan employees with the express object and purpose of disrupting Plaintiff's business by causing Plaintiff's employees who were also Local 680 members to stop work in sympathetic support of the Local 680 members employed by Tuscan. Defendants' unlawful picketing also had the object of forcing Plaintiff to cease doing business with Tuscan and Bercon and forcing Plaintiff to persuade Bercon to recognize Defendant Local 680 as exclusive representative of Bercon's employees in violation of § 8(b)(4) of the LMRA.

No matter how Farmland characterizes its proposed § 303 claim, the facts underlying it are germane to the disputes over the alleged breach of the no-strike and grievance and arbitration clauses which this Court directs to be submitted to arbitration. The defendant's goals in allegedly instigating the work stoppage and picketing are immaterial—what is relevant here is the complained-of conduct. Disposition of the disputes surrounding that conduct and the eventual recovery of damages may well obviate Farmland's proposed claim under § 303. The arbitrator, if the evidence warrants, will be able to assess full damages under either contract or tort theory.

Accordingly, the Court holds that the § 303 claim must be submitted to arbitration as well. Because the underlying dispute—the alleged violation of the no-strike clause—must be placed before an arbitrator pursuant to the parties' agreement, the Court denies Farmland's request to amend its complaint to add this claim.

The Court dismisses the § 301 claim and denies Farmland's motion to amend to add claims under § 303, § 1985 and federal common law. With the disappearance of all federal claims, the Court lacks jurisdiction to hear Farmland's proposed state law claim for tortious interference with contracts.[10] Farmland's motion for leave to amend must be denied in its entirety.

### III. *Conclusion*

For the aforementioned reasons, the Court grants the defendants' motion to dismiss Farmland's complaint and denies Farmland's motion for leave to amend its complaint to add new claims.

---

**10.** Jurisdiction in this matter was predicated on § 301 of the LMRA, 29 U.S.C.A. § 185.